IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| SERGEANT SHERMON DEAN DOWKIN, | ) | CIVIL NO. 10-00087 SOM/LEK |
| OFFICER FEDERICO DELGADILLO | ) | |
| MARTINEZ, JR. AND OFFICER | ) | ORDER PARTIALLY GRANTING AND |
| CASSANDRA BENNETT-BAGORIO, | ) | PARTIALLY DENYING DEFENDANTS' |
| | ) | MOTION FOR PARTIAL DISMISSAL |
| Plaintiffs, | ) | OF FIRST AMENDED COMPLAINT |
| | ) | |
| V. | ) | |
| | ) | |
| THE HONOLULU POLICE | ) | |
| DEPARTMENT, THE CITY AND | ) | |
| COUNTY OF HONOLULU, FORMER | ) | |
| CHIEF OF POLICE BOISSE CORREA, | ) | |
| CURRENT CHIEF OF POLICE LOUIS | ) | |
| KEALOHA, ASSISTANT CHIEF | ) | |
| MICHAEL TAMASHIRO, MAJOR | ) | |
| KENNETH SIMMONS, MAJOR JOHN | ) | |
| MCENTIRE, CAPTAIN NYLE DOLERA, | ) | |
| LIEUTENANT MICHAEL SERRAO, | ) | |
| LIEUTENANT DAN KWON, | ) | |
| LIEUTENANT WILLIAM AXT, | ) | |
| SERGEANT WAYNE FERNANDEZ, | ) | |
| SERGEANT RALSTON TANAKA, | ) | |
| OFFICER KASHIMOTORO, PAT AH | ) | |
| LOO AND Does 1-100, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

ORDER PARTIALLY GRANTING AND PARTIALLY DENYING DEFENDANTS'
MOTION FOR PARTIAL DISMISSAL OF FIRST AMENDED COMPLAINT

I.      INTRODUCTION.

Three Honolulu Police Officers bring this action

against their employer, the Honolulu Police Department ("HPD"),

and thirteen supervisors, officers, and HPD personnel for alleged

race and gender discrimination, retaliation, and disparate

treatment.  On March 30, 2010, Sergeant Shermon Dean Dowkin,

Officer Federico Delgadillo Martinez, Jr., and Officer Cassandra

Bennett-Bagorio filed a First Amended Complaint with fourteen causes of action.  On September 23, 2010, the fourteen Defendants filed a motion for partial dismissal for failure to state a claim upon which relief can be granted.[1]  The court grants in part and denies in part Defendants' motion for partial dismissal.

II.      BACKGROUND FACTS.

Sergeant Shermon Dean Dowkin ("Dowkin"), Officer Federico Delgadillo Martinez, Jr. ("Delgadillo"), and Officer Cassandra Bennett-Bagorio ("Bennett-Bagorio") (hereinafter referred to collectively as "Plaintiffs") were and are still employed by HPD.  See First Am. Compl. ¶ 24, ECF No. 5.  Dowkin and Delgadillo have and are currently serving in HPD's Regional Patrol Bureau District 4, First Watch.  See id. ¶¶ 4, 5.  Dowkin is a male Field Sergeant and has been employed with HPD since 1988.  Id. ¶ 4.  Delgadillo is a male Motorized Metropolitan Police Officer and has been an HPD employee since 1998.  Id. ¶ 5.  Bennett-Bagorio is a female Motorized Metropolitan Police Officer and has been with HPD since 1997.  Id. ¶ 6.  Dowkin is allegedly the only African-American supervisor, and Delgadillo is allegedly the only Mexican-American officer in the First Watch of District 4.  Id. ¶ 28.

---

[1] This motion violates Local Rule 10.2(a), which regulates, inter alia, font sizes.  All future filings with this court must comply with the font size requirements set forth in this district's local rules.

From November 2003 to August 2008, Dowkin supervised a Traffic Enforcement Team, also known as the Driving Under the Influence Team ("DUI Team"). See id. ¶ 25. Delgadillo was a member of the DUI Team. See id. The DUI Team was responsible for enforcing traffic laws on the Windward Side of Oahu during First Watch hours from 10:00 pm to 7:00 am. See id. Plaintiffs allege that the DUI Team makes more stops than other patrol officers on a nightly basis. See id.

Dowkin and Delgadillo allege that, between 2003 and 2008, their supervisors and fellow officers gave direct orders and conspired not to provide them protective "cover" or "backup" when Dowkin and Delgadillo arrested persons in the field. See id. ¶¶ 24, 27. Dowkin and Delgadillo's ongoing requests for assistance were allegedly "routinely ignored," as Defendants were purportedly "motivated by racial prejudice." Id. ¶ 29. Plaintiffs claim this was designed or accomplished with a reckless disregard for their physical safety and that, when they complained about race discrimination, retaliation also motivated Defendants. Id.

HPD's standard operating procedure allegedly required backup support by the nearest officer to any officer radioing that he or she was making a solo traffic stop at night. See id. ¶ 27. The procedure allegedly ensured that the arresting officer's physical safety and ultimate prosecution of offenders

were not jeopardized.  See id.  Plaintiffs allege further that
all HPD District 4 patrol officers were obligated to respond
immediately to requests for cover and to provide backup as part
of their normal police responsibilities.  See id.

Dowkin and Delgadillo, having been on special duty
assignment with the DUI team, returned to the First Watch in
2008.  See id. ¶ 31.  Plaintiffs allege that "for the most part"
officers assigned to special duty assignments do not lose their
seniority benefits when they return to First Watch.  Id.  But
when Dowkin and Delgadillo returned to First Watch from the DUI
team, they were allegedly demoted to "junior officer status."
Id.

On August 7, 2008, Dowkin delivered a written
complaint, alleging race discrimination by HPD, to Defendant
Major Simmons, Commander of HPD District 4.  Id. ¶ 29.  Dowkin
allegedly spoke with Major Simmons and explained the
circumstances regarding the disparate treatment.  Id.  Major
Simmons allegedly took no action in response to the complaint.
Id.  Plaintiffs further allege that, although the filing of the
complaint was protected activity, retaliation immediately
commenced.  Id.

On October 14, 2008, Bennett-Bagorio was allegedly
summoned by HPD Human Resources to provide testimony regarding
Dowkin and Delgadillo's race discrimination complaint.  Id. ¶ 32.

4

Bennett-Bagorio's testimony allegedly supported Dowkin and Delgadillo's claims of race discrimination and of purported failure to provide cover on traffic stops.  Id.  Bennett-Bagorio alleges that, as a result of her testimony and her gender, Defendants retaliated against her.  Defendants allegedly failed to provide her with backup on traffic stops, denied her critical training, humiliated her in front of her peers, and isolated her from normal workplace social contact.  Id.

Dowkin and Delgadillo filed a charge with the United States Equal Opportunity Commission Office ("EEOC") in Honolulu and with the Hawaii Civil Rights Commission ("HCRC") in November 2008.  See Am. Compl. 30, ¶ 33(CCC).  Bennett-Bagorio filed a charge of gender discrimination and retaliation with the EEOC and HCRC in April 2009.  See Am. Compl. 31, ¶ 33(NNN).

Plaintiffs filed the present lawsuit on February 20, 2010, see ECF No. 1, and a First Amended Complaint on March 30, 2010, see ECF No. 5.

III.    LEGAL STANDARD.

On a Rule 12(b)(6) motion, review is generally limited to the contents of the complaint.  Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir. 2001).  If matters outside the pleadings are considered, the Rule 12(b)(6) motion is treated as one for summary judgment.  See Keams v. Tempe Tech. Inst., Inc., 110 F.3d 44, 46 (9th Cir. 1997); Anderson v. Angelone, 86

5

F.3d 932, 934 (9th Cir. 1996).  However, courts may "consider certain materials--documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice--without converting the motion to dismiss into a motion for summary judgment."  United States v. Ritchie, 342 F.3d 903, 908 (9th Cir. 2003).

On a Rule 12(b)(6) motion to dismiss, all allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party.  Fed'n of African Am. Contractors v. City of Oakland, 96 F.3d 1204, 1207 (9th Cir. 1996).  To survive a motion to dismiss, a complaint must contain sufficient factual matter to "state a claim to relief that is plausible on its face."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  Id. (citing Twombly, 550 U.S. at 554).

Dismissal under Rule 12(b)(6) may be based on either: (1) lack of a cognizable legal theory, or (2) insufficient facts under a cognizable legal theory.  Balistreri v. Pacifica Police Dept., 901 F.2d 696, 699 (9th Cir. 1988) (citing Robertson v.

Dean Witter Reynolds, Inc., 749 F.2d 530, 533-34 (9th Cir. 1984)).

IV.      ANALYSIS.

        A.      The City, not HPD, is the Proper Municipal
                Defendant.

        The First Amended Complaint names HPD as a defendant. HPD is not an independent legal entity.  See Meyer v. City & County of Honolulu, 6 Haw. App. 505, 507 n.1, 729 P.2d 388, 390 n.1, rev'd in part on other grounds, 69 Haw. 8, 731 P.2d 149 (1986) (stating "the HPD is a department placed under supervision of the managing director of the City and County of Honolulu" and is not an "independent legal entity"); Headwaters Forest Def. v. Cnty. of Humboldt, et al., 276 F.3d 1125, 1127 (9th Cir. 2002) (treating police departments as part of their respective county or city).  Accordingly, all claims against HPD are dismissed.  As Plaintiffs note, the proper municipal defendant in this case is the City and County of Honolulu ("City").  See Opp'n 3-4, ECF No. 37.  The court will treat Plaintiffs' claims against the HPD as claims against the City.

        B.      Claims in Issue.

                1.      Claim 1: Violations of the Federal
                        Constitution.

        Plaintiffs withdrew Claim 1 in their Opposition.  See Opp'n 4.  The court does not address this withdrawn claim.

2.          Claim 2: Violation of Title VII of the Civil Rights Act of 1991.

Defendants do not move to dismiss Claim 2.
Accordingly, this claim remains for further adjudication.

3.          Claims 3 & 13: Violations of 42 U.S.C. §§ 1981 and 1983.

Defendants move to dismiss Claim 3, in which Plaintiffs sue the City for race discrimination in violation of 42 U.S.C. § 1981.  That statute states:

> All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

42 U.S.C. § 1981(a).

Because the language of § 1981 is "very similar" to the language of 42 U.S.C. § 1983, when a plaintiff brings a § 1981 claim against a government employer, courts apply the 42 U.S.C. § 1983 requirements to a § 1981 claim against a municipality. See Fed'n of African Am. Contractors v. City of Oakland, 96 F.3d 1204, 1215 (9th Cir. 1996).  This court also applies to this § 1981 claim all case law interpreting and applying the § 1983 analysis in Monell v. Department of Social Services, 436 U.S. 658 (1978).

8

Section 1983, under which Plaintiffs bring Count 13 against the City and individual Defendants, provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity . . . .

42 U.S.C. § 1983.

"Section 1983 imposes two essential proof requirements upon a claimant: 1) that a person acting under color of state law committed the conduct at issue, and 2) that the conduct deprived the claimant of some right, privilege or immunity protected by the Constitution or laws of the United States." Leer v. Murphy, 844 F.2d 628, 632-33 (9th Cir. 1988).

Local governmental bodies such as counties and municipalities are considered "persons" and may be sued under § 1983. Monell, 436 U.S. at 690.

A municipality like the City here is liable only for injuries arising from an official policy or custom. As the Supreme Court said in Monell, under § 1983 a municipality is not subject to respondeat superior liability absent a municipal policy or custom followed or implemented by its employees. 436 U.S. at 694.

9

Thus, to establish municipal liability, a plaintiff must "identify the policy, connect the policy to the city itself and show that the particular injury was incurred because of the execution of that policy." Garner v. Memphis Police Dept., 8 F.3d 358, 364 (6th Cir. 1993).

Municipal liability under § 1983 may be established in one of three ways:

> First, the plaintiff may prove that a city employee committed the alleged constitutional violation pursuant to a formal governmental policy or a longstanding practice or custom which constitutes the standard operating procedure of the local governmental entity. Second, the plaintiff may establish that the individual who committed the constitutional tort was an official with final policy-making authority and that the challenged action itself thus constituted an act of official governmental policy. Whether a particular official has final policy-making authority is a question of state law. Third, the plaintiff may prove that an official with final policy-making authority ratified a subordinate's unconstitutional decision or action and the basis for it.

Gillette v. Delmore, 979 F.2d 1342, 1346-47 (9th Cir. 1993) (citations and internal quotations omitted); accord Price v. Sery, 513 F.3d 962, 966 (9th Cir. 2008).  To put it differently, municipal liability under § 1983 (and therefore also under § 1981) may be premised on an officially promulgated policy, a custom or persistent practice, deliberately indifferent training that is the proximate cause of the violation of the plaintiff's federally protected rights, or a single decision by an official

with final decision-making authority.  See Monell, 436 U.S. at 695.

In addition, the custom or policy must be the "moving force behind the constitutional violation."  Dietrich v. John Ascuaga's Nugget, 548 F.3d 892, 900 (9th Cir. 2008) (quoting Monell, 436 U.S. at 694); see also Trevino v. Gates, 99 F.3d 911, 918 (9th Cir. 1996) ("Liability for improper custom may not be predicated on isolated or sporadic incidents; it must be founded upon practices of sufficient duration, frequency and consistency that the conduct has become a traditional method of carrying out policy.").

Plaintiffs do not meet the pleading requirements for their § 1981 claim and their § 1983 claim against the City because they fail to allege that the City was violating a widespread custom or habitual policy.  Plaintiffs allege that the City is responsible for "permitting, enabling, directing, facilitating and or ratifying" unlawful discrimination against Dowkin and Delgadillo.  See First Am. Compl. ¶ 48.  Allegedly, there was and is "no policy in force" regarding the prohibition, prevention, investigation, and remediation of workplace racial discrimination.  See id. ¶ 30.  At the hearing, Plaintiffs could not point to an affirmative allegation of any policy in their First Amended Complaint and admitted there was no allegation of any custom or policy applied by the City to anyone other than the

11

three Plaintiffs.  Plaintiffs appear to equate the lack of an affirmative nondiscrimination policy with an ongoing policy to discriminate.  The court is unpersuaded, as the mere absence of a nondiscrimination policy would not on its own condone discrimination but would instead leave in place the laws prohibiting discrimination.  An affirmative custom and practice must be alleged under Monell.  Monell, 436 U.S. at 694.

Claim 13 also asserts § 1983 claims against individual Defendants, to whom no custom or policy requirement applies. Defendants move for dismissal of the § 1983 claims against individual Defendants on the ground that such a claim is impermissible if entirely premised on conduct actionable under Title VII.  This court disagrees.

The First Amended Complaint alleges that Defendants violated Plaintiffs' due process, equal protection, and free speech rights through:

> (1) discrimination against Plaintiffs Sergeant Dowkin and Officer Delgadillo in the terms and conditions of their employment with these Defendants because of Plaintiffs' respective racial derivations/national origins, (2) discrimination against Plaintiff Officer Bennett-Bagorio in the terms and conditions of her employment with these Defendants because of her gender and (2) retaliation against all Plaintiffs because they complained about and/or opposed unlawful discrimination.

First Amended Complaint ¶ 107.

12

In other words, Plaintiffs' § 1983 claim against individual Defendants is premised on conduct prohibited by Title VII.  Citing Arnold v. United States, 816 F.2d 1306, 1311 (9th Cir. 1987), Defendants argue that dismissal is appropriate because Title VII provides a comprehensive remedial scheme. Arnold did not expressly hold that Title VII preempts § 1983 claims when the alleged federal violation is based on the same conduct constituting employment discrimination.  In Arnold, the Ninth Circuit held that the plaintiff's claims failed because the plaintiff had not alleged facts arising to a constitutional violation.  Id. at 1311.  While the Arnold court noted that, "[t]o the extent that Arnold's constitutional claims concern alleged discriminatory behavior . . . , Title VII provides a comprehensive remedy," it did not expressly rule that Title VII was the exclusive remedy.  At most, in dicta, the court cited case law indicating that a due process claim was precluded when its factual predicate was the same employment discrimination that was the subject of a Title VII claim.  Id. (citing Nolan v. Cleland, 686 F.2d 806, 814-15 (9th Cir. 1982)).

The year after Arnold was decided, the Ninth Circuit expressly examined the issue of whether Title VII is the exclusive remedy for employment discrimination.  See Roberts v. Coll. of the Desert, 870 F.2d 1411 (9th Cir. 1988) (as amended). In Roberts, the Ninth Circuit ruled that Title VII does not

preempt actions under § 1983 for violations of the Fourteenth Amendment when the alleged constitutional violation arises from the same facts constituting alleged Title VII discrimination. Id. at 1415.  In other words, the Ninth Circuit has ruled that Title VII does not generally deprive plaintiffs of other remedies.  Id.  Given the Ninth Circuit's holding in Roberts, this court denies the motion to dismiss § 1983 claims against individual Defendants to the extent it seeks dismissal based on Title VII preemption.

This court notes, moreover, that, having already dismissed the § 1983 claim against the City, it is left with § 1983 claims against parties who are not suable under Title VII. See Miller v. Maxwell's Int'l. Inc., 991 F.2d 583, 587-88 (9th Cir. 1993) ("The statutory scheme itself indicates that Congress did not intend to impose individual liability on employees. . . . Congress did not intend to impose individual liability on employees . . . . If Congress decided to protect small entities with limited resources from liability, it is inconceivable that Congress intended to allow civil liability to run against individual employees"); accord Lum v. Kauai County Council, 358 Fed. Appx. 860, 862 (9th Cir. 2009) ("there is no individual liability under Title VII"); Padway v. Palches, 665 F.2d 965, 968 (9th Cir. 1982) (holding that individual defendants cannot be held liable for back pay under Title VII); Lenhardt v. Basic

14

Inst. of Tech., Inc., 55 F.3d 377, 381 (8th Cir. 1995)

("Supervisors and other employees also cannot be held liable

under Title VII in their individual capacities.").  It is

difficult to see how Title VII could be said to preempt claims

that could not be brought under Title VII.

       4.        Claim 4: Violation of Title VI of
                        the Civil Rights Act of 1964, 42
                        U.S.C. § 2000d.

Plaintiffs allege that the City has violated Title VI

of the Civil Rights Act of 1964, 42 U.S.C. § 2000d, which

prohibits discrimination by actors who receive federal funding.

Under 42 U.S.C. § 2000d:

> No person in the United States shall, on the
> ground of race, color, or national origin, be
> excluded from participation in, be denied the
> benefits of, or be subjected to discrimination
> under any program or activity receiving Federal
> financial assistance.

42 U.S.C. § 2000d (1994).

To state a Title VI claim for damages, "a plaintiff

need only allege that (1) the entity involved is engaging in

racial discrimination; and (2) the entity involved is receiving

federal financial assistance."  Epileptic Found. v. City & Cnty.

of Maui, 300 F. Supp. 2d 1003, 1011 (D. Haw. 2003) (citing Fobbs

v. Holy Cross Health Sys. Corp., 29 F.3d 1439, 1447 (9th Cir.

1994), overruled in part on other grounds by Daviton v.

Columbia/HCA Healthcare Corp., 241 F.3d 1131 (9th Cir. 2001)).

To prevail on a Title VI claim, however, a plaintiff must prove two elements.  First, the plaintiff must show that he is an "intended beneficiary of the federally-funded program the defendants . . . participated in."  Wrenn v. Kansas, 561 F. Supp. 1216, 1221 (D. Kan. 1983); accord Otero v. Mesa Cnty. Valley Sch. Dist. No. 51, 470 F. Supp. 326, 329-30 (D. Colo. 1979); cf. Fobbs, 29 F.3d at 1447 (comparing Title VI pleading requirements and proof requirements).  Second, the plaintiff must show that the defendant intentionally discriminated against him in violation of the statute.  Alexander, 532 U.S. at 280, 121 S. Ct. 1511; Fobbs, 29 F.3d at 1447; Smith v. Univ. of Wash. Law Sch., 2 F. Supp. 2d 1324, 1336 (D. Wash. 1998).  But pleading requirements differ from proof requirements.  A Title VI plaintiff need not allege that the plaintiff was an intended beneficiary of the federally funded program.  Fobbs, 29 F.3d 1439, 1447 (9th Cir. 1994) ("There is no requirement that plaintiff plead that he was an intended beneficiary of the federally funded program in which defendants are alleged to have participated.").  Nor must a plaintiff allege intent to discriminate to assert a valid cause of action under Title VI. Id.  ("Although the plaintiff must prove intent at trial, it need not be pled in the complaint."); accord Monteiro v. Tempe Union High Sch. Dist., 158 F.3d 1022, 1026 (9th Cir. 1998) ("Under Title VI, however, we have required only that the complaint

16

allege that the defendant is engaging in discrimination, although a showing of intent is necessary at trial.").

The City seeks dismissal of the Title VI claim, arguing that the First Amended Complaint lacks allegations that Plaintiffs' race, color, or national origin motivated the alleged discriminatory conduct. This argument is unavailing, as there is no requirement that intent to discriminate be pled in a Title VI cause of action. Plaintiffs sufficiently assert a Title VI violation by alleging that the City engaged in discrimination and that the City received federal funding. See First Am. Compl. ¶ 7 (alleging that the City "received federal assistance").

> 5.      Claim 5: Violations of the Hawaii
>         constitution and Hawaii Revised
>         Statutes § 378-2.

In Claim 5 of the First Amended Complaint, Plaintiffs allege violations of the Hawaii constitution and Hawaii Revised Statutes § 378-2. Defendants move to dismiss the Hawaii constitutional claim, as Hawaii Revised Statutes § 378-2 provides the relief Plaintiffs seek under the Hawaii constitution. See Defs. Mot. Dismiss 14, ECF No. 21. Plaintiffs have withdrawn their claim under the Hawaii constitution and limit this cause of action to a violation of Hawaii Revised Statutes § 378-2. See Opp'n 6, ECF No. 37. As Defendants do not move for dismissal of the § 378-2 claim, no part of Claim 5 is in issue on this motion.

6.        <u>Claim 6: Reckless Endangerment.</u>

Plaintiffs withdrew Claim 6 (reckless endangerment) at the hearing because it was brought under criminal statutes that do not provide a private right of action.  The court does not address this withdrawn claim.

7.        <u>Claim 7: Hate Crimes.</u>

Plaintiffs also withdrew Claim 7 (hate crimes) at the hearing because it was brought under criminal statutes that do not provide a private right of action.  The court does not address this withdrawn claim.

8.        Claim 8: Negligent Training,
          Supervision and/or Retention;
          Negligent Failure to Report and
          <u>Investigate.</u>

Plaintiffs allege negligent training, supervision, and retention, along with negligent failure to report and investigate by the City, Chief Correa, Chief Kealoha, Assistant Chief McEntire, Major Simmons, Captain Dolera, Lieutenant Kwon, Lieutenant Axt, Sergeant Fernandez, and Sergeant Tanaka.  <u>See</u> First Am. Compl. ¶ 45.  To establish negligence, Plaintiffs must demonstrate a duty, breach of that duty, legal causation, actual injury and, for respondeat superior to apply, that the act occurred within the scope of the employee's employment.  <u>See</u> <u>Black v. Correa</u>, Civ. No. 07-299, 2007 WL 3195122, at *8 (D. Haw. Oct. 30, 2007).

a.        Individual Officers.

Under Hawaii state law, nonjudicial government officials performing a public duty enjoy qualified or conditional immunity when sued under state law.  See Towse v. State, 64 Haw. 624, 631, 647 P.2d 696, 702 (1981); Pahk v. State of Hawaii, 109 F. Supp. 2d 1262, 1269 (D. Haw. 2000).  This immunity is overcome if the official was motivated by malice and not by an otherwise proper purpose.  See Kajiya v. Dep't of Water Supply, 2 Haw. App. 221, 629 P.2d 635, 640 (Haw. Ct. App. 1981); Medeiros v. Kondo, 55 Haw. 499, 522 P.2d 1269, 1271-72 (Haw. 1974) ("We feel strongly that if an official, in exercising his authority is motivated by malice, and not by an otherwise proper purpose, then he should not escape liability for the injuries he causes.").  Hawaii courts define malice as "the intent, without justification or excuse, to commit a wrongful act", "reckless disregard of the law or of a person's legal right" and "ill will; wickedness of heart."  See Awakuni v. Awana, 115 Haw. 126, 141 (2007).  Therefore, Plaintiffs must allege not only negligence but also malice by the individual Defendants to survive a motion to dismiss Count 8.

Plaintiffs allege that the individual Defendants sued in Count 8 owed them a duty "to effectively and adequately implement anti-discrimination policies and procedures" and "train and supervise employees of HPD."  See First Am. Compl. ¶ 76.

19

Plaintiffs state that Defendants' negligent acts and omissions in failing to provide backup breached their duties.  See id. ¶ 78. Furthermore, Plaintiffs allege causation and damage in stating that Defendants' breach of these duties caused economic and emotional damage.  See id. ¶ 79. Plaintiffs further allege that they suffered fear of bodily harm and death, along with injury to reputation.  See id.

Notably, Plaintiffs allege malicious acts only by Sergeant Fernandez and Lieutenant Kwon.  For example, Sergeant Fernandez allegedly ordered all non-DUI Team officer not to provide cover to the DUI Team.  See First Am. Compl. 18, ¶ 33(F). Plaintiffs allege that this order was given specifically to those who should have provided cover for Dowkin because Sergeant Fernandez "intended to discriminate Dowkin and cause him to suffer harm."  See id. Sergeant Fernandez also allegedly chastised Bennett-Bagorio in front of her peers when she provided backup for Dowkin, see First Am. Compl. 19, ¶ 33(I), and allegedly ordered Delgadillo to abandon backup of Dowkin over the radio, see First Am. Compl. 21, ¶ 33(N).  On another occasion when Dowkin requested backup, Lieutenant Kwon did not provide cover even though he was allegedly available.  See id. ¶ 33(O). Lieutenant Kwon was allegedly playing computer games while Dowkin was processing the arrest of an intoxicated suspect.  See id.

Captain Dolera allegedly stated that Lieutenant Kwon's response was "reprehensible."  See id. ¶ 33(P).

Viewing the allegations in the Complaint and construing them in a light most favorable to Plaintiffs, the court concludes that Plaintiffs allege sufficient facts that, if proven through evidence obtained during discovery, may demonstrate negligence on the part of Lieutenant Kwon and Sergeant Fernandez, but not the other individual Defendants named in Count 8.

> b.      Municipal Liability.

A municipality is "subject to the state's tort laws in the same manner as any other private tortfeasor may be liable for state law torts that its agents committed." Kahale v. City and Cnty. of Honolulu, 104 Haw. 341, 349, 90 P.3d 233, 241 (Haw. 2004); see also Lauer v. Young Men's Christian Ass'n of Honolulu, 57 Haw. 390, 402, 557 P.2d 1334, 1341 (Haw. 1976) (holding that a municipality may be liable "on the same principles which impose liability on a non-municipal principal for the tortious conduct of its agents").  Under a respondeat superior theory of liability, an employer, including the City, may be held liable for the negligent acts of its employees if the acts occur within the scope of the employees' employment, even if the foreseeable effects of the acts occur outside the scope of employment. See Wong-Leong v. Hawaiian Indep. Refinery, Inc., 76 Haw. 433, 438-39, 879 P.2d 538, 543-44 (Haw. 1994).  The State of Hawaii

recognizes a respondeat superior theory that holds a municipality liable for the tortious acts of its agents committed with "malice" within the scope of the agents' employment.  See Lane v. Yamamoto, 2 Haw. App. 176, 178, 628 P.2d 634, 636 (Haw. Ct. App. 1981).  Thus, even if a public official acts with malice, the City still may be held liable if the act was completed within the scope of his or her employment.  The court therefore allows the negligence claims against the City to proceed.

9.      Claim 9: Intentional Infliction of Emotional Distress.

Defendants do not move to dismiss Claim 9. Accordingly, this claim remains for further adjudication.

10.      Claim 10: Negligent Infliction of Emotional Distress.

The elements of a claim for negligent infliction of emotional distress ("NIED") are: (1) that the defendant engaged in negligent conduct; (2) that the plaintiff suffered serious emotional distress; and (3) that such negligent conduct of the defendant was a legal cause of the serious emotional distress. Tran v.State Farm Mut. Automobile Ins. Co., 999 F. Supp. 1369, 1375 (D. Haw. 1998).  A cognizable claim for NIED under Hawaii law also "requires physical injury to either a person or property," see Calleon v. Miyagi, 76 Haw. 310, 320, 876 F.2d 1278 (1994), or a mental illness, see Haw. Rev. Stat. § 663-8.9.

Plaintiffs bring a negligent infliction of emotional distress claim against all Defendants.  However, as neither Delgadillo nor Bennett-Bagorio establishes a predicate physical injury or a mental illness, they cannot maintain a claim for NIED.  See Lui Ciro, Inc. v. Ciro, Inc., 895 F, Supp. 1365 (D. Haw. 1995).  Cf. Doe Parents No. 1 v. State, Dept. of Educ., 100 Haw. 34, 58 P.3d 545  (Haw. 2002) (exempting physical injury for NIED because of serious psychological trauma involved in student teacher molestation).

Sergeant Dowkin does allege a physical injury.  He says he was hospitalized for a heart ailment for the first time in his life from "the stress of the entire ordeal".  See First Am. Compl. 32, ¶ 33(OOO).  As Dowkin successfully pleads his NIED claim, his NIED claim against Lieutenant Kwon, Sergeant Fernandez, and the City remains for further adjudication.

11.      Claim 11: Bad Faith Breach of
         Employment Contract.

Plaintiffs may not maintain a cause of action for breach of the covenant of good faith and fair dealing in the employment context on the facts of this case.

The Hawaii Supreme Court has stated its reluctance to support tort claims for breach of good faith or fair dealing in the context of employment contracts because that tort generally is reserved for contracts in the insurance context.  See Francis v. Lee Enter., Inc., 89 Haw. 234, 237-39, 971 P.2d 707, 710-12

(Haw. 1999).  In <u>Francis</u>, the Hawaii Supreme Court cited cases holding that a tort for breach of an implied covenant of good faith and fair dealing may not be maintained for contracts.  <u>See, e.g.</u>, <u>Foley v. Interactive Data Corp.</u>, 47 Cal.3d 654, 254 Cal. Rptr. 211, 765 P.2d 373, 374 (Cal. 1988).  Even if such a tort may exist outside of the insurance context, <u>see</u> <u>Pachuta v. Unumprovident Corp.</u>, 242 F. Supp. 2d 752, 761 (D. Haw. 2002), Hawaii appellate law does not extend the tort to at-will, employee-employer relationships.

Plaintiffs do not allege facts suggesting anything other than an at-will employment situation.  Given Hawaii Supreme Court precedent and the factual allegations contained in Plaintiffs' First Amended Complaint, Plaintiffs do not state a claim upon which relief can be granted.  <u>See also</u> <u>Black v. Correa</u>, 2007 WL 3195122, at *15 (D. Haw. Oct. 30, 2007).  Accordingly, the court grants the Defendants' motion to dismiss the bad faith breach of employment contract claim.

12.      <u>Claim 12: Defamation Per Se.</u>

Defendants move to dismiss the claim for defamation per se.  The court dismisses this claim because the statements alleged by Plaintiffs are not actionable as a matter of law.

Defamation per se is a special character of defamation that consists of four categories: (1) imputation of a serious crime involving moral turpitude, (2) possession of a loathsome

24

disease, (3) attack on the plaintiff's competency in his business, trade, or profession, or (4) unchastity in women.  See Carey v. Piphus, 435 U.S. 247, 263, 98 S. Ct. 1042, 1052 n.18 (1978).

Plaintiffs allege that several Defendants made racially and sexually offensive statements, but they fail to allege statements falling under any of the defamation per se categories. For example, Officer Kashimoto allegedly referred to Delgadillo as a "big-nosed Mexican" and to Dowkin as "popolo" (the Hawaiian word for a black berry that is used by some to refer to an African-American).  See First Am. Compl. 28, ¶ 33(TT). Lieutenant Kwon also told Officer Delgadillo that "Mexicans can only drive BMW's or Mercedes if they are stolen."  See First Am. Compl. 27, ¶ 33(QQ).  At the hearing, Plaintiffs conceded that they had no case law holding that such racial epithets constitute defamation per se.  As these comments do not fit any of the defamation per se categories, the court dismisses the claim for defamation per se.

Quite apart from the confines of defamation per se, the court questions whether a racial epithet qualifies as even garden variety defamation.  As reprehensible as racial epithets are, they do not appear to the court to fit within the tort of defamation.

13.        Claim 14: Civil Conspiracy.

Plaintiffs' last cause of action in its First Amended

Complaint is a claim for civil conspiracy.  Hawaii courts have

stated that "the accepted definition of a conspiracy is a

combination of two or more persons or entities by concerted

action to accomplish a criminal or unlawful purpose, or to

accomplish some purpose not in itself criminal or unlawful by

criminal or unlawful means."  Fisher v. Grove Farm Co., Inc., 123

Haw. 82, 116, 230 P.3d 382, 416 (Haw. App. 2009).  This court has

therefore stated that "the common law tort of civil conspiracy

has three elements: (1) the formation of a conspiracy; (2)

wrongful conduct in furtherance of the conspiracy, i.e., an

actionable claim based upon deceit; and (3) damage."  Young v.

Bishop Estate, Civ. No. 09-00403, 2009 WL 3763029, at *14 (D.

Haw. Nov. 6, 2009).  Civil conspiracy arises out of two or more

defendants' specific actionable conduct – it "does not alone

constitute a claim for relief."  Siu v. Alwis, No. 07-00386, 2010

WL 2017104, *11 (D. Haw. June 18, 2009) (quoting Weinberg v.

Mauch, 78 Haw. 40, 49, 890 P.2d 277, 286 (1995)).

Plaintiffs' First Amended Complaint adequately pleads a

civil conspiracy claim.  Plaintiffs allege that Defendants

conspired not to provide backup.  See First Am. Compl. ¶ 27.

Plaintiffs allege wrongful conduct in that the conspiracy was

designed with "reckless disregard for Plaintiffs' physical

26

safety" and arose because of Defendants' "intent to discriminate" against Dowkin and Delgadillo because of their race and against Bennett-Bagorio because of her gender.  See id.  This conspiracy allegedly resulted in failure to provide backup on numerous occasions in response to Plaintiffs' specific requests for assistance.  See id. ¶ 33.  Plaintiffs allege damages in the form of, among other things, front and back pay, economic loss, emotional distress, and fear of bodily harm and death.  See id. ¶ 111.

Plaintiffs also allege that several Defendants conspired to give Delgadillo a poor performance rating.  Dowkin was allegedly ordered to rewrite his review of Officer Delgadillo and was forced to give him a "5" as a performance rating.  See First Am. Compl. 32, ¶ 33(OOO).  Major Simmons, Assistant Chief Tamashiro, Major McEntire, and Pat Ah Loo allegedly were "in conspiracy" to reduce Delgadillo performance rating below that level.  See id.  Plaintiffs further allege that these officers did not permit Delgadillo to respond to the reduction.  See id. The stress of this order allegedly caused Dowkin to be hospitalized for a heart ailment for the first time in his life. See id.  Without opining as to the merits of this claim, the court concludes that Plaintiffs adequately allege a civil conspiracy.

  B.   If Plaintiffs Want To Amend The Complaint,
       They Must File A Proper Motion Seeking Leave
       To Do So.

   Plaintiffs ask for leave to further amend their First

Amended Complaint if this court is dismissing claims.  This

request should be brought by Plaintiffs in a separate motion, not

in their opposition to Defendants' motion.  The court further

recommends that any such motion attach a proposed Second Amended

Complaint.  This court has previously stated:

> To obtain leave to amend, the party's motion
> should attach a copy of the proposed
> amendment or new pleading.  Failure to attach
> the proposed amendment is not necessarily
> fatal, but may result in denial of leave to
> amend on the grounds that the court cannot
> evaluate the propriety of granting leave
> unless the court is presented with the
> substance of the proposed amendment.

Won v. Dias, Civ. No. 06-00242, 2008 WL 113661, *3 (D. Haw. Jan.

11, 2008) (citing Local Rule 10.3; 3 James Wm. Moore et al.,

Moore's Federal Practice § 15.17[1] (3d ed. 2007)).

   This court in no way suggests that leave should indeed

be granted.  The court leaves that determination to the

Magistrate Judge if Plaintiffs file such a motion.

V.   CONCLUSION.

   For the foregoing reasons, the court grants the motion

to dismiss Claim 3 (42 U.S.C. § 1981), Claim 11 (bad faith breach

of employment contract), and Claim 12 (defamation per se).  The

court also grants the motion to dismiss Claim 13 (42 U.S.C.

§ 1983) against the City, but denies the motion to dismiss the portion of Claim 13 directed to individual Defendants.  Claim 10 (NIED) is dismissed to the extent it asserts claims by Delgadillo and Bennett-Bagorio, but the portion of Claim 10 brought by Dowkin is not dismissed and remains for further adjudication.

The court denies the motion to dismiss Claim 4 (42 U.S.C. § 2000d) and Claim 14 (civil conspiracy).  The court also denies the motion to dismiss Claim 8 (negligence) against Lieutenant Kwon, Sergeant Fernandez, and the City, but dismisses Claim 8 as against other Defendants.

As Plaintiffs have withdrawn Claim 1 (federal Constitution), Claim 6 (reckless endangerment), and Claim 7 (hate crimes), those claims are no longer in issue in this case.  Claim 2 (Title VII), Claim 5 (violation of Hawaii Revised Statutes § 378-2) and Claim 9 (IIED) were not the subject of the present motion and remain for further adjudication.

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, November 30, 2010



      /s/ Susan Oki Mollway
      Susan Oki Mollway
      Chief United States District Judge


Dowkin v. Honolulu Police Department, Civ. No. 10-00087 SOM/LEK; ORDER PARTIALLY GRANTING AND PARTIALLY DENYING DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT.