IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| SERGEANT SHERMON DEAN DOWKIN, OFFICER FEDERICO DELGADILLO MARTINEZ, JR. AND OFFICER CASSANDRA BENNETT-BAGORIO, | ) ) ) ) | CIVIL NO. 10-00087 SOM/LEK |
| | ) | ORDER PARTIALLY GRANTING AND |
| | ) | PARTIALLY DENYING DEFENDANTS' |
| Plaintiffs, | ) | MOTION FOR DISMISSAL OF |
| | ) | SECOND AMENDED COMPLAINT |
| | ) | |
| V. | ) | |
| | ) | |
| THE HONOLULU POLICE DEPARTMENT, THE CITY AND COUNTY OF HONOLULU, FORMER CHIEF OF POLICE BOISSE CORREA, CURRENT CHIEF OF POLICE LOUIS KEALOHA, ASSISTANT CHIEF MICHAEL TAMASHIRO, MAJOR KENNETH SIMMONS, MAJOR JOHN MCENTIRE, CAPTAIN NYLE DOLERA, LIEUTENANT MICHAEL SERRAO, LIEUTENANT DAN KWON, LIEUTENANT WILLIAM AXT, SERGEANT WAYNE FERNANDEZ, SERGEANT RALSTON TANAKA, OFFICER KASHIMOTORO, PAT AH LOO AND Does 1-100, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | |
| | ) | |
| Defendants. | ) | |

ORDER PARTIALLY GRANTING AND PARTIALLY DENYING
DEFENDANTS' MOTION FOR DISMISSAL OF SECOND AMENDED COMPLAINT

I.       INTRODUCTION.

On June 24, 2011, Plaintiffs Sergeant Shermon Dean

Dowkin, Officer Federico Delgadillo Martinez, Jr., and Officer

Cassandra Bennett-Bagorio of the Honolulu Police Department

("HPD") filed their Second Amended Complaint.  See ECF No. 139.

These Plaintiffs allege, among other things, race and sex

discrimination.  Defendants have filed a motion to dismiss this

Second Amended Complaint. See ECF No. 145. This court partially grants and partially denies Defendants' Motion for Dismissal of the Second Amended Complaint.

II.     BACKGROUND FACTS.

     The parties are familiar with the background of this case. The court includes here only the background facts relevant to this motion.

     Sergeant Shermon Dean Dowkin ("Dowkin"), Officer Federico Delgadillo Martinez, Jr. ("Delgadillo"), and Officer Cassandra Bennett-Bagorio ("Bennett-Bagorio") (hereinafter referred to collectively as "Plaintiffs") were and are still employed by HPD. See Second Am. Compl. ¶¶ 4, 5, ECF No. 139. Dowkin and Delgadillo have and are currently serving in HPD's Regional Patrol Bureau District 4, First Watch. See id. Dowkin is a male Field Sergeant and has been employed with HPD since 1988. Id. ¶ 4. Delgadillo is a male Motorized Metropolitan Police Officer and has been an HPD employee since 1998. Id. ¶ 5. Bennett-Bagorio is a female Motorized Metropolitan Police Officer and has been with HPD since 1997. Id. ¶ 6. Dowkin is allegedly the only African-American supervisor, and Delgadillo is allegedly the only Mexican-American officer in the First Watch of District 4. Id. ¶ 28.

     From November 2003 to August 2008, Dowkin supervised a Traffic Enforcement Team, also known as the Driving Under the

Influence Team ("DUI Team"). See id. ¶ 25. Delgadillo was a member of the DUI Team. See id. The DUI Team was responsible for enforcing traffic laws on the Windward Side of Oahu during the First Watch hours of 10:00 p.m. to 7:00 a.m. See id. Plaintiffs allege that the DUI Team makes more stops than other patrol officers on a nightly basis. See id.

Dowkin and Delgadillo allege that, between 2003 and 2008, their supervisors and fellow officers conspired not to provide them with protective "cover" or "backup" when they were arresting people in the field and directly ordered others to similarly refuse to provide backup to them. See id. ¶¶ 24, 27. Dowkin and Delgadillo's ongoing requests for assistance were allegedly "routinely ignored," because, Dowkin and Delgadillo claim, Defendants were "motivated by racial prejudice." Id. ¶ 29. Plaintiffs claim that this was designed or accomplished with a reckless disregard for their physical safety and that, when they complained about race discrimination, Defendants retaliated against them. Id.

HPD's standard operating procedure allegedly required backup support by the nearest officer to any officer radioing that he or she was making a solo traffic stop at night. See id. ¶ 27. The procedure allegedly ensured that the arresting officer's physical safety and ultimate prosecution of offenders were not jeopardized. See id. Plaintiffs allege that all

3

District 4 patrol officers were obligated to respond immediately
to requests for cover and to provide backup as part of their
normal police responsibilities.  See id.

On August 7, 2008, Dowkin delivered a written complaint
alleging race discrimination by HPD to Defendant Major Simmons,
Commander of District 4.  Id. ¶ 29.  Dowkin allegedly spoke with
Major Simmons and explained the circumstances regarding what he
considered disparate treatment.  Id.  Major Simmons allegedly
took no action in response to the complaint.  Id.  Plaintiffs
further allege that, although the filing of the complaint was
protected activity, retaliation immediately commenced.  Id.

Dowkin and Delgadillo, having been on special duty
assignment with the DUI team, returned to the First Watch in
2008.  See id. ¶ 31.  Plaintiffs allege that "for the most part"
officers assigned to special duty assignments do not lose their
seniority benefits when they return to First Watch.  Id.  When
Dowkin and Delgadillo returned to First Watch from the DUI team,
however, they were allegedly demoted to "junior officer status."
Id.

On October 14, 2008, Bennett-Bagorio was allegedly
summoned by HPD Human Resources to provide testimony regarding
Dowkin and Delgadillo's race discrimination complaint.  Id. ¶ 32.
Bennett-Bagorio's testimony allegedly supported Dowkin and
Delgadillo's claims of race discrimination and of the purported

4

lack of cover on traffic stops. Id. Bennett-Bagorio alleges

that, as a result of her testimony and her gender, Defendants

retaliated against her. Defendants allegedly failed to provide

her with backup on traffic stops, denied her critical training,

humiliated her in front of her peers, and isolated her so she

lacked normal workplace social contact. Id.

Dowkin and Delgadillo filed a charge with the United

States Equal Opportunity Commission Office ("EEOC") in Honolulu

and with the Hawaii Civil Rights Commission ("HCRC") on November

10, 2008. See id. ¶ 33(CCC). Bennett-Bagorio filed a charge of

gender discrimination and retaliation with the EEOC and HCRC on

April 29, 2009. See id. ¶ 33(NNN).

On November 30, 2010, this court issued an Order

Partially Granting and Partially Denying Defendants's Motion for

Partial Dismissal of Plaintiffs's First Amended Complaint. See

ECF No. 43 ("Order"). On June 24, 2011, Plaintiffs filed their

Second Amended Complaint. See ECF No. 139. This Second Amended

Complaint differs from the First Amended Complaint in only

limited respects. It adds two new paragraphs that allege failure

to provide backup to Plaintiffs on October 11, 2010, and October

18, 2010, see Second Am. Compl. ¶¶ 33(VVV), 33(WWW). It also

includes at the end of each state law cause of action an

allegation that "[t]he individual Defendants, in perpetrating the

foregoing, were motivated by malice and not by an otherwise

proper purpose." <u>See</u> <u>id.</u> ¶¶ 50, 58, 62, 69, 77, 80.  However,

for the most part, the two Complaints have a great deal in

common.

On July 8, 2011, Defendants filed a motion to dismiss

this Second Amended Complaint.  <u>See</u> ECF No. 145 ("Mot.").  On

August 15, 2011, Plaintiffs filed their untimely Opposition after

court staff called to inquire about the late filing.  Plaintiffs'

counsel explained that he and opposing counsel had agreed to

extend briefing deadlines without notifying the court.  <u>See also</u>

ECF No. 159.  The court issued a minute order noting that this

practice violated Local Rule 6.2(a), which prohibits the

extending of any briefing deadline when parties have an existing

hearing date without previous discussion with the judge.  <u>See</u> ECF

No. 156.  Defendants filed their Reply on August 17, 2011, in

accordance with the court's minute order.  <u>See</u> ECF No. 158.

III.      <u>STANDARD OF REVIEW.</u>

Rule 12(b)(6) of the Federal Rules of Civil Procedure

provides for dismissal of a complaint, or a claim therein, when a

claimant fails "to state a claim upon which relief can be

granted."  Dismissal under Rule 12(b)(6) may be based on either:

(1) lack of a cognizable legal theory; or (2) insufficient facts

under a cognizable legal theory.  <u>Balistreri v. Pacifica Police</u>

<u>Dep't</u>, 901 F.2d 696, 699 (9th Cir. 1988) (citing <u>Robertson v.</u>

<u>Dean Witter Reynolds, Inc.</u>, 749 F.2d 530, 533-34 (9th Cir.

1984)).

       "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" That is, a plaintiff must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." <u>Ashcroft v. Iqbal</u>, ___ U.S. ___, 129 S. Ct. 1937, 1949 (2009) (quoting <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 556, 570 (2007); <u>see</u> <u>Evanns v. AT&T Corp.</u>, 229 F.3d 837, 839 (9th Cir. 2000).

       Under Rule 12(b)(6), the court's review is generally limited to the contents of the complaint. <u>See</u> <u>Marder v. Lopez</u>, 450 F.3d 445, 448 (9th Cir. 2006); <u>Sprewell v. Golden State Warriors</u>, 266 F.3d 979, 988 (9th Cir. 2001). All allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party. <u>See</u> <u>Knievel v. ESPN</u>, 393 F.3d 1068, 1072 (9th Cir. 2005). Conclusory allegations and unwarranted inferences, however, are insufficient to defeat a motion to dismiss. <u>See</u> <u>Sanders v. Brown</u>, 504 F.3d 903, 910 (9th Cir. 2007); <u>Cholla Ready Mix, Inc. v. Civish</u>, 382 F.3d 969, 973 (9th Cir. 2004).

       In particular, the court should "identify[] pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." <u>Iqbal</u>, 129 S. Ct. at 1950. The

court should disregard "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." Id. at 1949. After eliminating such unsupported legal conclusions, the court must identify "well-pleaded factual allegations," which are assumed to be true, "and then determine whether they plausibly give rise to an entitlement to relief." Id. at 1950.

IV.      ANALYSIS.

As a preliminary matter, the court notes that the Second Amended Complaint is unduly long and confusing and in some instances reiterates claims that were withdrawn or dismissed as defective without curing the identified defects. The court strikes all references to reckless endangerment, to bad faith breach of employment contract, and to claims arising under the Hawaii constitution, and strikes HPD as a Defendant, in keeping with this court's earlier Order. In addition, Plaintiffs have agreed to dismiss all Doe Defendants from this lawsuit. See Opp'n at 3.

A.      Count I (Title VII) and Count III (Section 378-2)
        Against the City

Plaintiffs appear to assert disparate treatment, retaliation, and hostile work environment claims against the City under Title VII in Count I and under Hawaii Revised Statutes 378-2 in Count III. The court denies the motion to dismiss with respect to all three theories.

The elements of a disparate treatment claim under Title

8

VII are (1) membership by a plaintiff in a protected class; (2) satisfaction by the plaintiff of the qualifications for the position in issue; (3) an adverse employment action; and (4) more favorable treatment of similarly situated individuals outside the plaintiff's protected class. See Davis v. Team Elec. Co., 520 F.3d 1080, 1089 (9th Cir. 2008); see also Nicholson v. Hyannis Air Serv., Inc., 580 F.3d 1116, 1123 (9th Cir. 2009). Under section 378-2 of Hawaii Revised Statutes, a plaintiff must show similar elements. Furukawa v. Honolulu Zoological Soc'y, 85 Haw. 7, 12-14, 936 P.2d 642, 648-50 (1997).

For Title VII purposes, Plaintiffs all belong to a protected class. Dowkin is an African-American male, Delgadillo is an Mexican-American male, and Bennett-Bagorio is a Caucasian female. See, e.g., Nicholson v. Hyannis Air Serv., Inc., 580 F.3d 1116, 1123 (9th Cir. 2009) (women as protected class); Cornwell v. Electra Cent. Credit Union, 439 F.3d 1018, 1031 (9th Cir. 2006) (African-Americans as protected class); Cordova v. State Farm Ins. Companies, 124 F.3d 1145, 1148 (9th Cir. 1997) (Mexicans as protected class). With respect to the second element, there appears to be no dispute that all Plaintiffs are qualified for their positions, as they allege that they remain in them. See Second Am. Compl. ¶¶ 4-6. Plaintiffs also sufficiently plead that they were subject to an adverse employment action in not receiving backup. See generally ¶ 33.

Sergeant Dowkin and Officer Delgadillo further allege that they lost their seniority status and were demoted to "junior officer status" when they returned to First Watch from the DUI team. <u>See</u> <u>id.</u> ¶ 31. Officer Bennett-Bagorio claims that she was denied critical training that would have increased her income and enhanced her promotion opportunities. <u>See</u> <u>id.</u> ¶ 32. Plaintiffs thus appear to sufficiently plead the first three elements of a prima facie disparate treatment claim.

Plaintiffs also adequately plead the fourth element, which concerns "similarly situated" individuals outside their protected class who were treated more favorably. <u>See, e.g.</u>, Second Am. Compl. ¶¶ 31, 32, 33(III). Plaintiffs claim that, for the most part, officers who were assigned to the DUI Team did not lose their seniority status when they returned to First Watch. <u>See</u> <u>id.</u> ¶ 31. They further allege that they had to comply with "petty and arbitrary orders . . . which were not required of other officers." <u>See</u> <u>id.</u> ¶ 33(X); <u>see also</u> <u>id.</u> ¶ 24 ("no other officers are held to the same standards"). Officer Bennett-Bagorio was allegedly denied participation in an intoxilyzer test class and her slot was given to a male officer. <u>See</u> <u>id.</u> ¶ 33(III). At the hearing, Plaintiffs pointed to Paragraphs 24 and 33(KKK) as pleading additional facts that go to the fourth element of a prima facie discrimination claim. This court questions whether Paragraph 33(KKK) pleads facts regarding

similarly situated individuals; it alleges that Sergeant Dowkin
and Delgadillo were falsely accused of having sold tamales while
on duty.  See id. ¶ 33(KKK).  Nevertheless, viewing the facts in
the light most favorable to Plaintiffs, the court finds the
allegations regarding similarly situated individuals sufficient.
The court concludes that Plaintiffs adequately allege a disparate
treatment claim under Title VII and section 378-2 of Hawaii
Revised Statutes in their Second Amended Complaint.

        The court also finds sufficient the allegations going
to claims of retaliation and a hostile work environment under
Title VII and section 378-2 of Hawaii Revised Statutes.

        The elements of a prima facie case of retaliation under
Title VII are (1) engagement by a plaintiff in a protected
activity; (2) an adverse employment action; and (3) a causal link
between the protected activity and the adverse employment action.
Freitag v. Ayers, 468 F.3d 528, 541 (9th Cir. 2006).  Under
Hawaii law, a plaintiff must establish similar elements.  A
plaintiff must show that first, he or she either opposed a
practice forbidden by Hawaii law, or filed a complaint,
testified, or assisted in any proceeding respecting a prohibited
discriminatory practice; second, that the plaintiff's employer
discriminated against the plaintiff; and third, that there is a
causal link between the protected activity and the adverse
action.  Schefke v. Reliable Collection Agency, Ltd., 96 Haw.

11

408, 425-26, 32 P.3d 52, 69-70 (2001).

The Second Amended Complaint alleges that Dowkin and Delgadillo engaged in protected activity when filing a written complaint of racial discrimination with Major Simmons.  <u>See</u> Second Am. Compl. ¶ 33(QQ).  Complaints to a supervisor about unlawful employment actions may constitute protected activity. <u>See</u> <u>Passantino v. Johnson & Johnson Consumer Prods., Inc.</u>, 212 F.3d 493, 506 (9th Cir. 2000) (noting that the plaintiff's informal complaints to her supervisor about his alleged sexist behavior constituted protected activity); <u>Knox v. City of Portland</u>, 543 F. Supp. 2d 1238, 1248 (D. Or. 2008) ("Informal complaints to a supervisor constitute protected activity in a retaliation claim" because the complaints essentially oppose an unlawful employment practice).

The pleading further alleges that, two weeks after the filing of the discrimination complaint, one or more Defendants allegedly caused Dowkin and Delgadillo's DUI Team to be disbanded, depriving them of overtime income and causing them to lose their seniority status.  <u>See</u> Second Am. Compl. ¶ 33(RR).  As pled, Plaintiffs adequately allege an adverse employment action. "[A]n action is cognizable as an adverse employment action if it is reasonably likely to deter employees from engaging in protected activity."  <u>See</u> <u>Elvig v. Calvin Presbyterian Church</u>, 375 F.3d 951, 965 (9th Cir. 2004) (citations omitted).

For the third element, Dowkin and Delgadillo allege
that the adverse employment actions were "in obvious retaliation
for their opposition to illegal racial discrimination."
See Second Am. Compl. ¶ 33(RR).  They further plead that
Defendants retaliated "because Plaintiffs had complained to HPD
about or otherwise opposed the illegal race and gender
discrimination and retaliation."  See Second Am. Compl. ¶ 27.

Officer Bennett-Bagorio also sufficiently pleads a
claim for retaliation.  On February 20, 2009, Officer Bennett-
Bagorio allegedly provided testimony supporting Sergeant Dowkin
and Officer Delgadillo's claims of racial discrimination and the
failure to provide cover during traffic stops.  See Second Am.
Compl. ¶ 32; Moyo v. Gomez, 40 F.3d 982, 984 (9th Cir. 1994)
(explaining protected activity as "protest[ing] or otherwise
oppos[ing] unlawful employment discrimination directed against
employees protected by Title VII").  Officer Bennett-Bagorio
alleges that she suffered adverse employment action in the form
of failure to receive backup, denial of critical training,
isolation from normal workplace social contact, and humiliation
in front of her peers.  See Second Am. Compl. ¶ 32.  These
actions were allegedly the "direct result" of her "opposition to
the racial discrimination . . . perpetrated against Sergeant
Dowkin and Officer Delgadillo."  See id.  Bennett-Bagorio also
says she received a "false and negative performance evaluation,"

13

allegedly in "retaliation for her opposition to the racial
discrimination perpetrated against Sergeant Dowkin and for filing
a written protected complaint of discrimination and retaliation
with HPD on February 20, 2009." See id. ¶ 33(MMM).

Just as Counts I and III sufficiently allege
retaliation, they sufficiently allege a hostile work environment.
The elements of a Title VII hostile work environment claim are
(1) the subjecting of a plaintiff to verbal or physical conduct
of a harassing nature, (2) the unwelcome nature of the conduct,
and (3) a level of conduct that was "sufficiently severe or
pervasive to alter the conditions of the victim's employment and
create an abusive working environment." Kortan v. Cal. Youth
Auth., 217 F.3d 1104, 1110 (9th Cir. 2000) (quoting Pavon v.
Swift Trans. Co., Inc., 192 F.3d 902, 908 (9th Cir. 1999)).  "The
working environment must both subjectively and objectively be
perceived as abusive." Craig v. M&O Agencies, Inc., 496 F.3d
1047 (9th Cir. 2007) (internal quotations omitted).  Objective
hostility is determined by examining the totality of the
circumstances, including the frequency of the alleged
discriminatory conduct, its severity, and whether it unreasonably
interfered with an employee's work performance.  Id.; see also
Surrell v. California Water Serv. Co., 518 F.3d 1097, 1109 (9th
Cir. 2008).  Mere isolated incidents do not create a hostile work
environment; the hostility must be serious and pervasive.  Craig,

14

496 F.3d at 1056.

Under Hawaii law, a plaintiff must show:(1) he or she was subjected to conduct of a racial or sexual nature, (2) that was unwelcome, and (3) the conduct was severe or pervasive and served the purpose of interfering with his or her work performance or creating an intimidating, hostile, or offensive work environment.  See <u>Nelson v. Univ. of Hawaii</u>, 97 Haw. 376, 390, 38 P.3d 95, 106 (2001).

Although the Second Amended Complaint does not specifically refer to a hostile work environment, <u>see</u> Opp'n at 5 (admitting that Plaintiffs do not use the term in their pleading), the court views the factual allegations as sufficient to support a hostile work environment claim.  See <u>Shipley v. State of Hawaii, Department of Education</u>, Civ. No. 05-00145 JMS/BMK, 2007 WL 188029, at *8 (D. Haw. Jan. 22, 2007) (finding plaintiff adequately alleged facts for a hostile work environment claim although not explicitly included in the complaint).

Plaintiffs allege that their supervisors and fellow officers failed to provide requested protective cover or backup in the field and at police stations when Plaintiffs had to deal with arrested subjects.  <u>See</u> Second Am. Compl. ¶ 24.  They allege that these refusals reflected animus based on race and sex.  <u>See id.</u> ¶ 27.  Plaintiffs' allegation that these failures put them "at risk of bodily harm and even death" suggests the severity and

pervasiveness of the alleged activities.  <u>See</u> <u>id.</u> ¶ 3.  <u>See also</u>

<u>Jemmott v. Coughlin</u>, 85 F.3d 61, 67 (2d Cir. 1996) (refusal to

provide backup to the plaintiff prison guard supported a hostile

work environment claim based on race)<b>;</b> <u>Olsen v. Ammons</u>, 2009 WL

4573581, at *5-6 (M.D. Pa. Dec. 1, 2009) ("[R]efusing to provide

a fellow police officer with backup because of gender would

support a hostile work environment claim because it would

indicate severe or pervasive gender discrimination."); <u>Kramarski</u>

<u>v. Village of Orland Park</u>, No. 00 C 2487, 2002 WL 1827637, at *9

(N.D. Ill. Aug. 9, 2002) (denying plaintiff backup and blocking

her radio transmissions were sufficiently pervasive to create a

hostile environment).

　　　　Accordingly, Plaintiffs' claims in Counts I and III

under Title VII and section 378-2 against the City survive this

motion to dismiss.

> 1.   Count III (Section 378-2) Against Individual
>      Defendants)

　　　　Count III also asserts employment discrimination in

violation of section 378-2 against individual Defendants.

Plaintiffs have agreed to dismiss the section 378-2 claim against

Defendants Correa, Kealoha, Tamashiro, Simmons, McEntire, Dolera,

Serrao, and Loo.  <u>See</u> Opp'n at 7.  Defendants do not appear to

dispute the sufficiency of the section 378-2 claim against

Sergeant Fernandez or Lieutenant Kwon.  <u>See</u> Mot. at 12.  This

leaves for this court's review the section 378-2 claims against

16

Defendants Sergeant Tanaka and Officer Kashimoto.[1]

To the extent Plaintiffs assert claims against individual Defendants under subsections (1) and (2) of section 378-2, this court also dismisses these claims against individual Defendants. There is no individual liability under these subsections. <u>Lum v. Kauai County Council</u>, 358 Fed. Appx. 860, 862 (9th Cir. 2009) (unpublished opinion holding that there is no individual liability under sections 378-2(1)and 378-2(2)) (affirming 2007 WL 3408003 (D. Haw. 2007)).

The court reads the Second Amended Complaint as having sufficient factual allegations to state claims against Sergeant Tanaka and Officer Kashimoto under subsection (3) of section 378-2, which prohibits the aiding and abetting of prohibited discrimination. In paragraph 50 of the Second Amended Complaint, Plaintiffs say that Defendants were "aiding" and "abetting" pervasive and unlawful discrimination and harassment. <u>See</u> Second Am. Compl. ¶ 50. More specifically, Plaintiffs allege that Officer Kashimoto's "deliberate and/or malicious" failure to

---

[1] At the hearing, Plaintiffs attempted to reassert Count III against some Defendants they had already dismissed in their briefing. The court holds Plaintiffs to the dismissal stated in the Opposition. To the extent Plaintiffs have voluntarily dismissed certain claims against certain Defendants, those claims cannot be reasserted against those Defendants later. If Plaintiffs could voluntarily dismiss claims against certain Defendants when facing motions to dismiss, then reassert those claims against the same Defendants later, any order disposing of a motion to dismiss would become meaningless, and motions would be rendered a waste of time.

provide backup or to actively assist at the scene of a stabbing put Sergeant Dowkin in danger of bodily harm. See id. ¶ 33(VVV). Also, Plaintiffs allege that Officer Kashimoto was "perpetrating discrimination against [Bennett-Bagorio] in conspiracy with her Defendant supervisors." See id. ¶ 33(JJJ). Officer Kashimoto was allegedly "directly responsible" for not providing Officer Delgadillo with requested backup. See id. ¶ 33(TT).

With respect to Sergeant Tanaka, Plaintiffs further allege that he knowingly failed to provide cover to Officer Bennett-Bagorio when she entered a local bar in response to a reported altercation and further failed to order his subordinates to provide backup. See id. ¶ 33(WWW). Officer Bennett-Bagorio says she was physically attacked by a suspected male felon and suffered a serious back injury as a result. See id. Sergeant Dowkin and Officer Delgadillo allege numerous times when they were not provided requested backup and Sergeant Tanaka was on duty. See id. ¶¶ 33(EE), (FF). Sergeant Tanaka allegedly told Officer Delgadillo that mistreatment was directed at him because he was Mexican. See id. ¶ 33(GG).

As pled, the allegations support section 378-2(3) claims against Sergeant Tanaka and Officer Kashimoto. Accordingly, the section 378-2(3) claim proceeds for further adjudication against Sergeant Tanaka, Officer Kashimoto, Sergeant Fernandez, and Lieutenant Kwon.

B. <u>Count II (Title VI)</u>

Defendants do not move to dismiss Count II, which alleges a Title VI violation. This court earlier declined to dismiss the Title VI claim asserted in the First Amended Complaint. This claim remains for further adjudication.

C. Count IV (Negligent Training, Supervision, <u>Retention, Failure to Report and Investigate)</u>

Defendants seek dismissal of Count IV, which appears to be a wide-ranging negligence claim. Plaintiffs assert Count IV against Defendants City, Kwon, Fernandez, Tanaka, and Kashimoto.

1. Negligent Training, Retention, Failure to <u>Report, and Investigate</u>

Defendants Kwon, Fernandez, Tanaka, and Kashimoto seek dismissal of Count IV, arguing that the Second Amended Complaint fails to apprise them of what specific actions individual Defendants took or did not take that indicate a failure to train or supervise. <u>See</u> Mot. at 15.

In its previous Order, this court ruled that a basic negligence claim was sufficiently alleged. <u>See</u> Order at 19-20. The court noted that, to survive a motion to dismiss, Plaintiffs had to allege facts supporting both negligence and malice as required by state law for negligence claims against public officials, but that no malice was alleged against Defendants other than Kwon and Fernandez. <u>See</u> <u>Medeiros v. Kondo</u>, 55 Haw. 499, 522 P.2d 1269, 1271-72 (Haw. 1974) ("We feel strongly that

19

if an official in exercising his authority is motivated by malice, and not by an otherwise proper purpose, then he should not escape liability for the injuries he causes."); <u>Kajiya v. Dep't of Water Supply</u>, 2 Haw. App. 221, 629 P.2d 635, 640 (Haw. Ct. App. 1981). Accordingly, the court allowed the negligence claim to proceed against only Lieutenant Kwon and Sergeant Fernandez. <u>See</u> Order at 21. Plaintiffs now plead Count IV anew, seeking to expand it to include other Defendants. Having already decided the negligence claim against Sergeant Fernandez and Lieutenant Kwon, the court now proceeds to analyze Count IV against Defendants Sergeant Tanaka and Officer Kashimoto.

Plaintiffs adequately allege malicious acts by Sergeant Tanaka and Officer Kashimoto. As explained in the analysis of Count III, Plaintiffs claim that Sergeant Tanaka, allegedly the supervising officer on a matter, deliberately failed to provide backup to Bennett-Bagorio, who was responding to a report of an altercation at a local bar and ended up with a serious back injury. <u>See</u> Second Am. Compl. ¶ 33(WWW). Sergeant Tanaka allegedly deliberately and/or maliciously failed to order his subordinate officers not to provide cover to Officer Bennett-Bagorio. <u>See</u> <u>id.</u>

Similarly, Officer Kashimoto allegedly failed to provide prompt backup at the scene of a stabbing to Sergeant Dowkin, who ended up hospitalized for a heart ailment for the

first time in his life.  <u>See</u> <u>id.</u> ¶¶ 33(VVV) and (OOO).  Officer

Kashimoto was also allegedly "directly responsible" for not

providing requested backup to Officer Delgadillo, <u>see</u> <u>id.</u>

¶ 33(TT), and "deliberately called off" Officer Bennett-Bagorio's

request for backup.  <u>See</u> <u>id.</u> ¶ 33(GGG).

    Notwithstanding the adequate allegations of malice,

Count IV remains difficult to decipher because it lacks

specificity with respect to which Defendant is being sued for

each type of negligence.  For example, although Count IV alleges

negligent training, it does not allege that each individual

Defendant had a duty to train others.  At the hearing, the court

asked Plaintiffs which forms of negligence were asserted against

which Defendants.  Plaintiffs stated that the negligent training,

retention, reporting, and investigating claims were asserted

against all named Defendants in Count IV except for Officer

Kashimoto, against whom only a negligent reporting claim was

alleged.  The Second Amended Complaint does not make this clear.

While this court, having received this clarification, does not

dismiss the negligent retention, failure to report, and failure

to investigate claims against Officer Kashimoto, Sergeant Tanaka,

Lieutenant Kwon, Sergeant Fernandez, or the City, it is far from

an ideal statement of a claim.  The negligent training claim

against Kashimoto is dismissed, but remains pending against

Tanaka, Kwon, Fernandez, and the City.

2.  <u>Negligent Supervision</u>

To the extent Plaintiffs assert a negligent supervision claim against any Defendant, the court dismisses that claim.

To state a claim for negligent supervision, a plaintiff must allege that the employee was acting outside the scope of his or her employment.  <u>See</u> <u>Pulawa v. GTE Hawaiian Tel.</u>, 143 P.3d 1205, 1220 (Haw. 2006).  In the Second Amended Complaint, Plaintiffs allege that all individually named Defendants were acting "in the course and scope of his employment" at all relevant times.  <u>See</u> Second Am. Compl. ¶¶ 8-20.  This allegation leaves no one identified as having acted outside the scope of employment and therefore appears to negate any negligent supervision claim.  Accordingly, the court dismisses the negligent supervision claim against the City and individual Defendants.

D.  Count V (Intentional Infliction of Emotional Distress)

Defendants seek dismissal of the intentional infliction of emotional distress ("IIED") claim against all Defendants except Lieutenant Kwon and Sergeant Fernandez.  <u>See</u> Mot. at 16. Plaintiffs have agreed to dismiss the IIED claim against Defendants Correa, Kealoha, Tamashiro, Simmons, McEntire, Dolera, Serrao, and Loo.  <u>See</u> Opp'n at 8.  That means that, putting Kwon and Fernandez aside, Plaintiffs are now asserting a new IIED claim against only Defendants Kashimoto, Tanaka, and Axt.  In

their brief, Plaintiffs indicated that they intend to file a
Motion to Amend and a Third Amended Complaint to include factual
allegations sufficient to a support a cause of action for IIED
against Defendants Kashimoto, Tanaka, and Fernandez.  See Opp'n
at 9.  However, at the hearing, Plaintiffs stated that they were
not conceding that the IIED claim against these Defendants was
insufficiently pled in the Second Amended Complaint.
Accordingly, the court analyzes the IIED claim against Defendants
Tanaka, Kashimoto, and Axt.

       "Under Hawaii law, the elements of IIED are '(1) that
the act allegedly causing the harm was intentional or reckless,
(2) that the act was outrageous, and (3) that the act caused (4)
extreme emotional distress to another.'"  Enoka v. AIG Haw. Ins.
Co., 109 Haw. 537, 559, 128 P.3d 850, 872 (2006) (quoting Hac v.
Univ. of Haw., 102 Haw. 92, 106-07, 73 P.3d 46, 60-61 (2003)).
The Hawaii Supreme Court defines the term "outrageous" as
"'without just cause or excuse and beyond all bounds of
decency.'"  Enoka, 109 Haw. at 559 (quoting Lee v. Aiu, 85 Haw.
19, 34 n.12, 936 P.2d 655, 670 n.12 (1997)).  "Moreover, 'extreme
emotional distress' constitutes, inter alia, mental suffering,
mental anguish, nervous shock, and other 'highly unpleasant
mental reactions.'"  Id. (quoting Hac, 102 Haw. at 106).

              1.    Sergeant Tanaka
       Sergeant Dowkin and Officer Delgadillo allege that,

23

while on duty, Sergeant Tanaka failed to provide requested backup for a traffic stop and arrest. See Second Am. Compl. ¶¶ 33(EE), 33(FF).

Sergeant Tanaka allegedly told Officer Delgadillo that mistreatment was directed at him because he was Mexican. See id. ¶ 33(GG). Furthermore, Sergeant Tanaka allegedly told Officer Bennett-Bagorio that he hated that "fuckin' Rico [Officer Delgadillo]." See id. ¶ 33(HHH). Officer Bennett-Bagorio allegedly suffered a serious back injury because Sergeant Tanaka failed to provide backup when she entered a local bar in response to a reported altercation. See id. ¶ 33(WWW). Sergeant Tanaka was allegedly the supervising officer on scene, and allegedly deliberately and/or maliciously failed to order his subordinate officers to provide backup. See id.

All three Plaintiffs allege that these events caused them "to suffer anxiety, severe and emotional and physical distress and suffering." See id. ¶ 60. These allegations sufficiently support their intentional infliction of emotional distress claims against Sergeant Tanaka.

### 2. Officer Kashimoto

On July 30, 2008, Sergeant Dowkin was allegedly not provided with requested backup while Officer Kashimoto was on duty. See id. ¶ 33(KK). On October 11, 2010, Officer Kashimoto allegedly failed to provide prompt backup to Sergeant Dowkin at

24

the scene of a stabbing.  *See* <u>id.</u> ¶ 33(VVV).  These events allegedly caused Sergeant Dowkin to be hospitalized for a heart ailment for the first time in his life.  *See* <u>id.</u> ¶ 33(OOO).

On August 15, 2008, Officer Kashimoto was allegedly "directly responsible" for not providing requested backup to Officer Delgadillo.  *See* <u>id.</u> ¶ 33(TT).  Officer Kashimoto allegedly often referred to Officer Delgadillo as a "big-nosed Mexican" and to Sergeant Dowkin as "popolo" (the Hawaiian word for a dark-colored berry that is also used by some to refer to an African-American).  *See* <u>id.</u>

On February 13, 2009, Officer Bennett-Bagorio also did not receive requested backup because the "cover was deliberately called off by Officer Kashimoto."  *See* <u>id.</u> ¶ 33(GGG).  Officer Bennett-Bagorio alleges that Officer Kashimoto was "perpetrating discrimination against her in conspiracy with her Defendant supervisors."  *See* <u>id.</u> ¶ 33(JJJ).

All three Plaintiffs plead sufficient allegations to support their intentional infliction of emotional distress claim against Officer Kashimoto.

### 3. <u>Lieutenant Axt</u>

The court also finds that Dowkin and Delgadillo plead sufficient IIED allegations against Lieutenant Axt.  On January 8, 2008, Dowkin and Delgadillo allegedly met with Lieutenant Axt to express their concerns about their physical safety and lack of

requested backup.  See id. ¶ 33(V).  After this meeting,
Plaintiffs allege that Axt failed to provide backup on multiple
occasions.  See id. ¶¶ 33(BB), (DD), (EE), (FF), (HH), (II),
(JJ), (LL); see id. ¶ 33(SSS).  The court finds that this is
sufficient to allege intent.  Furthermore, Plaintiffs allege that
Axt made sexist and racist comments.  See id. ¶ 33(PPP).  On
January 8, 2008, Lieutenant Axt allegedly informed Dowkin that he
would have to attend additional training because his presence as
an African-American officer was disruptive.  See id. ¶ 33(W).
Plaintiffs allege that Lieutenant Axt knew that such training
would reflect poorly on Dowkin's police record and affect his
reputation, promotability, and finances.  See id.  The next day,
Dowkin was allegedly threatened again with such training if he
did not comply with "petty and arbitrary orders" that were not
applied to other officers.  See id. ¶ 33(X).  Plaintiffs allege
that Lieutenant Axt, as the supervisor of the DUI Team, held
Dowkin and Delgadillo to different standards.  See id. ¶ 33(U).
Dowkin and Delgadillo plead sufficient allegations for an IIED
claim against Lieutenant Axt.

        All three Plaintiffs may proceed with their IIED claims
against Sergeant Tanaka and Officer Kashimoto, and Dowkin and
Delgadillo may proceed with their IIED claim against Axt.

                E.    Count VI (Negligent Infliction of Emotional
                      Distress)

        The elements of a claim for negligent infliction of

emotional distress ("NIED") are: (1) that the defendant engaged in negligent conduct; (2) that the plaintiff suffered serious emotional distress; and (3) that such negligent conduct of the defendant was a legal cause of the serious emotional distress. Tran v.State Farm Mut. Automobile Ins. Co., 999 F. Supp. 1369, 1375 (D. Haw. 1998). A cognizable claim for NIED under Hawaii law also requires "physical injury to either a person or property," see Calleon v. Miyaqi, 76 Haw. 310, 320, 876 F.2d 1278 (1994), or a mental illness, see Haw. Rev. Stat. § 663-8.9.

In the Second Amended Complaint, Dowkin and Bennett-Bagorio assert an NIED claim against all Defendants. Defendants seek dismissal of the NIED claim against all Defendants except Lieutenant Kwon and Sergeant Fernandez. See Mot. at 16. Plaintiffs agree to dismiss this cause of action against all Defendants except Lieutenant Kwon, Sergeant Fernandez, Sergeant Tanaka, and the City. See Opp'n at 9. As established in the court's previous Order, Sergeant Dowkin's NIED claim against Lieutenant Kwon, Sergeant Fernandez, and the City may proceed given allegations of a predicate physical injury. See Order at 23. The court now turns to Bennett-Bagorio's NIED claim in Count VI. See Opp'n at 9.

The court previously dismissed Officer Bennett-Bagorio's NIED claim because she had not alleged a predicate physical injury or mental illness. See Order at 23. In the

27

Second Amended Complaint, Officer Bennett-Bagorio alleges a physical injury. She alleges that, on October 18, 2010, she suffered a serious back injury because she did not receive cover from Sergeant Tanaka. See Second Am. Compl. ¶ 33(WWW). Officer Bennett-Bagorio was allegedly attacked by a suspected male felon when responding to a report of an altercation at a local bar. See id. Sergeant Tanaka was allegedly the supervising officer on the scene and allegedly deliberately and/or maliciously failed to order his subordinate officers to provide cover to Officer Bennett-Bagorio. See id. The court permits Officer Bennett-Bagorio's NIED claim against Sergeant Tanaka and the City to proceed.

F.   Count VII (42 U.S.C. § 1983)

In Count VII, Plaintiffs bring § 1983 claims, asserting violations of equal protection and due process under the Fourteenth Amendment and of freedom of speech under the First Amendment. See Second Am. Compl. ¶¶ 70-77.[2] This claim is

_____

[2] Plaintiffs misstate this court's prior ruling on the § 1983 claim. Plaintiffs claim that the court has already ruled that the First Amended Complaint stated a claim against all Defendants based on the alleged violation of Plaintiffs' due process, equal protection, and free speech rights. See Opp'n at 10. This court made no such ruling. Instead, in denying Defendants' earlier motion to dismiss the § 1983 claim, the court addressed only the argument that such a claim is impermissible if entirely premised on conduct actionable under Title VII. See Order at 12. The court rejected that argument, but as other grounds were not advanced with respect to the § 1983 claim against individual Defendants, the court did not otherwise analyze that claim.

asserted only against the individual Defendants, who, Plaintiffs allege, denied them due process and equal protection based on Sergeant Dowkin and Officer Delgadillo's race and Officer Bennett-Bagorio's gender. <u>See</u> Second Am. Compl. ¶ 75. They also allege retaliation by Defendants after Plaintiffs complained about and opposed unlawful discrimination. <u>See</u> <u>id.</u> Plaintiffs agree to dismiss this cause of action against Defendants Correa and Kealoha. <u>See</u> Opp'n at 10. The court proceeds to analyze the § 1983 claim against the remaining individual Defendants.

Plaintiffs seek to enforce their constitutional rights via 42 U.S.C. § 1983, which provides an avenue for vindicating deprivations of rights "secured by the Constitution or laws of the United States." <u>Cal. Alliance of Child & Family Servs. v. Allenby</u>, 589 F.3d 1017, 1025 n.2 (9th Cir. 2009). Section 1983 provides, in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity . . . .

42 U.S.C. § 1983.

"Section 1983 imposes two essential proof requirements upon a claimant: 1) that a person acting under color of state law

committed the conduct at issue, and 2) that the conduct deprived the claimant of some right, privilege or immunity protected by the Constitution or laws of the United States." <u>Long v. Cnty. of L.A.</u>, 442 F.3d 1178, 1185 (9th Cir. 2006).

Defendants argue that they are entitled to qualified immunity with respect to the § 1983 claim. Whether Defendants are or are not qualifiedly immune is not a matter that this court can determine on the present record. Defendants have the burden of establishing their defense of qualified immunity, and they cite no law imposing on a plaintiff any requirement to allege a means of overcoming qualified immunity. While it is indeed sometimes possible to discern that a defendant is immune based solely on the allegations in a complaint, that is not so here. The court therefore examines the § 1983 allegations to determine whether they adequately state a claim, not whether they negate qualified immunity.

With respect to the alleged due process violation, the Second Amended Complaint does not indicate whether Plaintiffs are asserting a substantive due process claim,[3] a procedural due

---

[3] For a plaintiff to adequately allege a violation of his substantive due process rights under § 1983, he must allege that the government deprived him of life, liberty, or property in a way that "shocks the conscience" or "interferes with rights implicit in the concept of ordered liberty." <u>See</u> <u>Nunez v. City of Los Angeles</u>, 147 F.3d 867, 871 (9th Cir. 1998).

process claim,[4] or both.  At the hearing, Plaintiffs said they
were asserting a procedural due process violation in the form of
the lack of procedures to investigate discrimination and
retaliation.  They said they were alleging a substantive due
process violation based on the disparate treatment Plaintiffs
allegedly suffered in being forced to abide by certain rules and
regulations not forced on others.  They claimed that their
liberty interest was infringed on when they were denied a safe
environment and had to deal with the lack of procedure by the
City for investigating their claims and protecting them from
retaliation.  Even with these amplifications, the Second Amended
Complaint remains unclear as to which Defendant is being sued for
which alleged due process violation.

        With respect to the alleged equal protection
violation, Plaintiffs said at the hearing that their equal
protection claim mirrors their Title VII claim.

        Neither party briefed the issue of a First Amendment
violation.  Without here ruling on what First Amendment rights
Plaintiffs have, the court reminds the parties that not
everything a public employee says has First Amendment

---

        [4] To state a procedural due process claim under § 1983, a
plaintiff must allege "(1) a liberty or property interest
protected by the Constitution; (2) a deprivation of the interest
by the government; [and] (3) lack of process." Portman v. County
of Santa Clara, 995 F.2d 898, 907 (9th Cir. 1993); see also Bd.
of Regents of State Colleges v. Roth, 408 U.S. 564, 569-70
(1972); McRorie v. Shimoda, 795 F.2d 780, 786 (9th Cir. 1986).

protections.  See Garcetti v. Ceballos, 547 U.S. 410 (2006).

In the Opposition, Plaintiffs point to five paragraphs of the Second Amended Complaint that they claim allege violations of their constitutional rights.  See Opp'n at 10.  However, Plaintiffs fail to specify which constitutional right is addressed by which allegation.  At the hearing, Plaintiffs were asked to more specifically connect constitutional rights with factual allegations.  Plaintiffs claimed that Paragraphs 33(U), 33(EE), 33(GGG), and 33(OOO) allege violations of equal protection.  The court cannot discern how some of these paragraphs support an equal protection claim.  For example, Paragraph 33(OOO) alleges a conspiracy between several officers in rewriting Officer Delgadillo's performance rating.

In support of their procedural due process claim, Plaintiffs pointed to only paragraph 33(JJJ).  Paragraph 33(JJJ) alleges that Captain Dolera disclosed the contents of Officer Bennett-Bagorio's discrimination and retaliation complaint to Officer Kashimoto.  It remains unclear how all individual Defendants have committed a procedural due process violation in the form of this disclosure.

Plaintiffs failed entirely to point to any paragraph supporting a substantive due process violation or a First Amendment violation.  Moreover, the five highlighted paragraphs name only nine of the eleven individual Defendants named in the

§ 1983 claim.  No allegations regarding Lieutenants Serrao and Kwon were identified.

Because the § 1983 claim is extremely vague and confusing, it is dismissed.

### G.   Count VIII (Civil Conspiracy)

In Count VIII of the Second Amended Complaint, Plaintiffs assert a claim for civil conspiracy.  This court previously held that the conspiracy charge was adequately pled.  See Order at 26-27.  Defendants now complain that the Second Amended Complaint fails to properly allege which Defendants took what specific act in connection with the alleged conspiracy.  See Mot. at 18.  Defendants request dismissal of Count VIII against all individual Defendants except Lieutenant Kwon and Sergeant Fernandez.  As Plaintiffs do not address this argument in their Opposition, they appear to have no objection.  On that ground, the court dismisses Count VIII except with respect to Kwon and Fernandez.

### H.   Count IX (Temporary and Permanent Injunctive Relief)

Count IX seeks injunctive relief for the "immediate and irreparable harm" that will occur from the alleged retaliation from their unlawful discrimination complaints.  See Second Am. Compl. at 62.  The court follows the well-settled rule that a claim for "injunctive relief" standing alone is not a cause of action.  See, e.g., Henke v. Arco Midcon, L.L.C., 750 F. Supp. 2d

1052, 1059-60 (E.D. Mo. 2010) ("Injunctive relief, however, is a remedy, not an independent cause of action."); Jensen v. Quality Loan Serv. Corp., 702 F. Supp. 2d 1183, 1201 (E.D. Cal. 2010) ("A request for injunctive relief by itself does not state a cause of action" (quotation marks and citation omitted)); Plan Pros, Inc. v. Zych, 2009 WL 928867, at *2 (D. Neb. Mar. 31, 2009) ("no independent cause of action for injunction exists"); Motley v. Homecomings Fin., LLC, 557 F. Supp. 2d 1005, 1014 (D. Minn. 2008) (same). Injunctive relief may be available if Plaintiffs are entitled to such a remedy upon prevailing on an independent cause of action. Accordingly, the court dismisses Count IX in its entirety.

V.       CONCLUSION.

For the foregoing reasons, the court grants the motion to dismiss the section 378-2(1) and 378-2(2) claims in Count III against all Defendants; the negligent supervision claim in Count IV against all Defendants; the negligent training claim in Count IV against Kashimoto; Count VII (§ 1983) in its entirety; the conspiracy claim in Count VIII against all Defendants except Kwon and Fernandez; and the injunctive relief claim in Count IX.

The motion is denied in all other respects.

Taking into account Plaintiffs' voluntary dismissals of certain claims against certain Defendants, this order leaves for further adjudication the Title VII claim in Count I against the

City; Dowkin and Delgadillo's Title VI claim in Count II against the City; the section 378 claim in Count III against the City; the section 378-2(3) claim in Count III against Kwon, Fernandez, Tanaka and Kashimoto; the negligent retention, failure to report, and failure to investigate claims in Count IV against Kashimoto, Tanaka, Kwon, Fernandez, and the City; the negligent training claims in Count IV against Tanaka, Kwon, Fernandez, and the City; all three Plaintiffs' IIED claims in Count V against Tanaka and Kashimoto; Dowkin and Delgadillo's IIED claims in Count V against Axt; Dowkin's NIED claim in Count VI against Kwon, Fernandez, and the City; Bennett-Bagorio's NIED claim in Count VI against Tanaka and the City; and the conspiracy claim in Count VIII against Kwon and Fernandez.

If Plaintiffs move for leave to file a Third Amended Complaint, Plaintiffs should avoid the deficiencies in the Second Amended Complaint. The Second Amended Complaint often fails to distinguish among Defendants as to alleged causes of action. Any further Amended Complaint must clearly state how each named Defendant has injured which Plaintiff. In other words, Plaintiffs should explain, in clear and concise allegations, what each Defendant did and how those specific facts create a plausible claim for relief. A complaint that fails to explain which allegations are relevant to which Defendant is confusing. This, in turn, "impose[s] unfair burdens on litigants and judges"

because it requires both to waste time formulating their own best guesses of what the Plaintiffs may or may not have meant to assert, risking substantial confusion if their understanding is not equivalent to Plaintiffs'.  See McHenry v. Renne, 84 F.3d 1172, 1179-80 (9th Cir. 1996).

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, September 2, 2011.



/s/ Susan Oki Mollway
Susan Oki Mollway
Chief United States District Judge

Dowkin v. Honolulu Police Department, Civ. No. 10-00087 SOM/LEK; ORDER PARTIALLY GRANTING AND PARTIALLY DENYING DEFENDANTS' MOTION TO DISMISS SECOND AMENDED COMPLAINT.