```
          IN THE UNITED STATES DISTRICT COURT

             FOR THE DISTRICT OF HAWAII

SERGEANT SHERMON DEAN DOWKIN,  )   CIVIL 10-00087 LEK-RLP
OFFICER FEDERICO DELGADILLO    )
MARTINEZ, JR., and OFFICER     )
CASSANDRA BENNETT-BAGORIO,     )
                               )
          Plaintiffs,          )
                               )
     vs.                       )
                               )
THE CITY AND COUNTY OF         )
HONOLULU, FORMER CHIEF OF      )
POLICE BOISSE CORREA,          )
CURRENT CHIEF OF POLICE        )
LOUIS KEALOHA, ASSISTANT       )
CHIEF MICHAEL TAMASHIRO,       )
MAJOR KENNETH SIMMONS,         )
MAJOR JOHN MCENTIRE,           )
CAPTAIN NYLE DOLERA,           )
LIEUTENANT MICHAEL SERRAO,     )
LIEUTENANT DAN KWON,           )
LIEUTENANT WILLIAM AXT,        )
SERGEANT WAYNE FERNANDEZ,      )
SERGEANT RALSTAN TANAKA,       )
OFFICER COLBY KASHIMOTO,       )
PAT AH LOO,                    )
                               )
          Defendants.          )
_____)
```

**ORDER DENYING DEFENDANT CITY AND COUNTY OF HONOLULU'S MOTION TO STAY PENDING RESOLUTION OF 9TH CIRCUIT APPEAL IN RELATED CASE**

Before the Court is Defendant City and County of Honolulu's ("the City") "Motion to Stay Pending Resolution of 9th Circuit Appeal in Related Case" ("Motion"), filed on May 29, 2014. [Dkt. no. 463.] Defendants Lieutenant Dan Kwon ("Kwon") and Sergeant Wayne Fernandez ("Fernandez") filed a joinder in the Motion on August 26, 2014. [Dkt. no. 472.] Plaintiffs Sergeant Shermon Dean Dowkin ("Dowkin"), Officer Federico Delgadillo

Martinez, Jr. ("Delgadillo"), and Officer Cassandra Bennett-Bagorio ("Bennett-Bagorio," all collectively "Plaintiffs") filed their memorandum in opposition on August 28, 2014, and the City filed its reply on September 8, 2014. [Dkt. nos. 474, 476.] This matter came on for hearing on September 22, 2014. After careful consideration of the Motion, supporting and opposing memoranda, and the arguments of counsel, the City's Motion is HEREBY DENIED for the reasons set forth below.

### BACKGROUND

Plaintiffs originally filed this action on February 22, 2010. They filed an amended complaint on March 30, 2010, and the Second Amended Complaint for Compensatory, Statutory and Punitive Damages and for Injunctive Relief Prohibiting Illegal and Life-Threatening Racial and Gender Discrimination and Retaliation ("Second Amended Complaint") on June 24, 2011. [Dkt. nos. 5, 139.] On January 17, 2012, Plaintiffs filed their Third Amended Complaint for Compensatory, Statutory and Punitive Damages ("Third Amended Complaint"). [Dkt. no. 221.] The Defendants named in the Third Amended Complaint are: the City, Former Chief of Police Boisse Correa ("Correa"), Current Chief of Police Louis Kealoha ("Kealoha"), Assistant Chief Michael Tamashiro ("Tamashiro"), Major Kenneth Simmons ("Simmons"), Major John McEntire ("McEntire"), Captain Nyle Dolera ("Dolera"), Lieutenant Michael Serrao ("Serrao"), Kwon, Lieutenant

2

William Axt ("Axt"), Fernandez, Sergeant Ralstan Tanaka ("Tanaka"), Officer Colby Kashimoto ("Kashimoto"), and Pat Ah Loo ("Ah Loo,"[1] and all collectively "Defendants"). The Third Amended Complaint states:

> This is an action to recover compensatory and punitive damages brought by three Honolulu Police Officers against their employers, The Honolulu Police Department and The City and County of Honolulu (hereinafter "HPD" and the "City" respectively, and "HPD" collectively), and against numerous complicit supervising officers, for systemic racial and gender discrimination and retaliation.

[Third Amended Complaint at ¶ 3.] Plaintiffs allege that the named supervisors and officers "put Plaintiffs at risk of bodily harm and even death solely because of invidious racial and gender prejudice." [Id. at ¶ 4.]

According to the Third Amended Complaint, Dowkin is a forty-seven-year-old, African-American male, who has been employed with HPD since 1988. He is a Field Sergeant on the First Watch in HPD District 4, and he "was the only African-American supervisor in HPD District 4 for most of the relevant time period." [Id. at ¶ 5.] Delgadillo is a forty-four-year-old, Mexican-American male, who has been employed with HPD since 1998. He is a Motorized Metropolitan Police Officer. At all relevant times, he was the only Mexican-American HPD officer in

---

[1] According to the Third Amended Complaint, Ah Loo is "the civilian Labor-Relations Advisor for HPD." [Third Amended Complaint at ¶ 21.]

3

District 4.  Plaintiffs allege that, as a result of his mistreatment, Delgadillo was forced to resign from HPD, *i.e.*, Plaintiffs allege he was constructively discharged, in the summer of 2011.  [Id. at ¶ 7.]  Bennett-Bagorio is a forty-four-year-old, Caucasian female, who has been employed with HPD since 1997.  She is also a Motorized Metropolitan Police Officer.  [Id. at ¶ 8.]

Plaintiffs assert that HPD requires that, "when a motorized patrol officer makes a traffic stop, fellow officers must immediately proceed to the scene to cover and protect the officer making the stop" and, "on all police calls involving any potential for violence, backup officers are immediately assigned to cover the officer initially arriving at the scene."  [Id. at ¶ 25.]  Plaintiffs allege that, "[a]lthough officially condemned, there is an unspoken practice employed by law enforcement officers to isolate and ostracize a fellow officer whom they dislike."  [Id. at ¶ 26.]  Plaintiffs allege that one of the reasons officers may not provide backup for another officer is in retaliation for the officer's opposition to racism or sexism within HPD.  According to Plaintiffs, this practice is dangerous and can ultimately force the ostracized officer to resign.  [Id. at ¶¶ 27-28.]

Plaintiffs allege that Dowkin and members of his team, including Delgadillo, were deprived of backup from other patrol

officers. Plaintiffs allege that this was: in retaliation for an internal complaint that Dowkin made about a racially derogatory remark that his supervisor made; and because of Dowkin's and Delgadillo's race. Dowkin made verbal and written complaints to his commanding officers. On July 9, 2008, on behalf of himself and Delgadillo, Dowkin submitted a written complaint to Correa, who was Chief of Police at that time. [Id. at ¶¶ 32-42, 68.]

According to the Third Amended Complaint, Fernandez - with Kwon's approval - ordered the First Watch officers not to provide backup for Dowkin and Delgadillo. From that time through the filing of the Third Amended Complaint, no one in the chain of command - including Serrao, Dolera, McEntire, Simmons, Tamashiro, Correa, and Kealoha - ever countermanded the order or disciplined Fernandez or Kwon for giving it. Plaintiffs also allege that some of the individual Defendants retaliated against Dowkin and Delgadillo for making a race discrimination complaint by: failing to stop the problem regarding lack of backup; failing to investigate their complaint and to punish offending officers; and providing tacit approval of the discriminatory failure to provide backup. Plaintiffs allege that the conduct of those Defendants violated both federal and state law. [Id. at ¶¶ 43-45.]

Plaintiffs also allege that Bennett-Bagorio, another member of the First Watch patrol, verified Dowkin's and Delgadillo's allegations. Bennett-Bagorio was then discriminated

5

against because she is female and/or retaliated against for opposing unlawful discrimination. After Bennett-Bagorio filed a formal complaint about the retaliation and discrimination, she suffered further retaliation, including an incident on October 18, 2010 when she suffered serious injury. According to Plaintiffs, Tanaka intentionally allowed Bennett-Bagorio to enter a bar without backup, and a suspect physically assaulted her. [Id. at ¶¶ 46-47.]

Plaintiffs further argue that Dowkin (since 2003), Delgadillo (since 2007), and Bennett-Bagorio (since 2008) have been subjected to other forms of race discrimination and retaliation, including racial comments and being reprimanded for failing to comply with standards that were not enforced on other officers. [Id. at ¶¶ 50-52.] Plaintiffs also allege that Defendants and other City employees conspired to violate Plaintiffs' constitutional, statutory, and common law rights or to otherwise cause Plaintiffs harm. The conspiracy includes, *inter alia*: the failure to provide backup; the failure to properly supervise officers in Plaintiffs' chain of command; filing false personnel complaints against Plaintiffs; filing false performance evaluations that inhibited Plaintiffs' professional advancement; and denying Plaintiffs overtime. [Id. at ¶ 54.]

In November 2011, the City, through HPD, informed Dowkin that none of his complaints of race discrimination were sustained. Plaintiffs argue that this confirms the existence of a conspiracy between Defendants to discriminate and retaliate against Dowkin. [Id. at ¶ 142.]

The Third Amended Complaint alleges the following claims:

- a race and gender discrimination claim by Plaintiffs against the City for violation of Title VII of the Civil Rights Act of 1964, as amended by the Civil Rights Act of 1991 ("Title VII"), 42 U.S.C. § 2000e-2, *et seq.* ("Count I");

- a race, color, or national origin discrimination claim by Dowkin and Delgadillo against the City for violation of Title VI of the Civil Rights Act of 1964 ("Title VI"), 42 U.S.C. § 2000d, *et seq.* ("Count II");

- a claim for violations of the Hawai`i State Constitution and a claim under Haw. Rev. Stat. § 378-2 by Dowkin and Delgadillo against the City, and a claim under Haw. Rev. Stat. § 378-2(3) against Tanaka, Kashimoto, Fernandez, and Kwon ("Count III);

- a negligent training claim by Plaintiffs against Tanaka, Kwon, Fernandez, and the City, and negligent retention, failure to report and investigate against Kashimoto, Tanaka, Kwon, Fernandez, and the City ("Count IV");

- an intentional infliction of emotional distress ("IIED") claim by Plaintiffs against Tanaka and Kashimoto, an IIED claim by Dowkin and Delgadillo against Axt, and an IIED claim by Bennett-Bagorio against Fernandez ("Count V");

- a negligent infliction of emotional distress ("NIED") claim by Dowkin against the City, Kwon, and Fernandez, and an NIED claim by Bennett-Bagorio against the City and Tanaka ("Count VI");

- a 42 U.S.C. § 1985 conspiracy claim by Plaintiffs against Defendants ("Count VII"); and

- a civil conspiracy claim by Plaintiffs against Defendants ("Count VIII").

As to damages, Plaintiffs allege that Defendants are jointly and severally liable for: actual and compensatory damages, including Plaintiffs' past and future economic losses; extreme emotional and psychological pain and suffering; punitive damages; statutory damages; pre-judgment interest and post-judgment interest; reasonable attorneys' fees and costs; and any other appropriate statutory or equitable relief.

On September 2, 2011, Chief United States District Judge Susan Oki Mollway issued an order granting in part and denying in part the Motion to Dismiss Plaintiffs' Second Amended Complaint that Defendants filed July 8, 2011 ("9/2/11 Dismissal Order").[2] [Dkt. nos. 145, 167.[3]] Chief Judge Mollway, *inter alia*, dismissed Plaintiffs' claims in the Second Amended Complaint against the individual Defendants for employment discrimination in violation of § 378-2(1) and (2) on the ground that there is no individual liability under those subsections. 9/2/11 Dismissal Order, 2011 WL 3882844, at *7.

On May 10, 2012, Plaintiffs filed their Motion for Leave to File a Fourth Amended Complaint ("Motion to Amend").

---

[2] Chief Judge Mollway recused herself from this case on March 27, 2013, and the case was reassigned to this Court. [Dkt. no. 448.]

[3] The 9/2/11 Dismissal Order is available at 2011 WL 3882844.

[Dkt. no. 283.] Plaintiffs sought to add: two new defendants - Denise Tsukayama, the City's Equal Employment Opportunity ("EEO") Officer ("Tsukayama"), and Dave Kajihiro, HPD Deputy Chief ("Kajihiro"); new factual allegations that Plaintiffs argued were based on discovery obtained from Defendants after Plaintiffs requested leave to file the Third Amended Complaint; new causes of action, including additional conspiracy claims; and thirty-seven exhibits in support of the conspiracy claims. The magistrate judge denied the Motion to Amend in an order filed on July 3, 2012 ("7/3/12 Order"). [Dkt. no. 338.[4]] On July 20, 2012, Plaintiffs filed an appeal from the 7/3/12 Order. [Dkt. no. 379.] On August 27, 2012, Chief Judge Mollway denied the appeal and affirmed the denial of the Motion to Amend. [Dkt. no. 393.]

In addition, on July 23, 2012, Chief Judge Mollway filed the Order Granting Defendants' Motion for Partial Dismissal of Third Amended Complaint ("7/23/12 Dismissal Order"). [Dkt. no. 382.[5]] She dismissed Count IV as to all Defendants except the City, 2012 WL 3012643, at *5, dismissed Count VII in its entirety, id. at *6, and dismissed Count VIII in its entirety,

---

[4] The 7/3/12 Order is available at 2012 WL 2577572. It also addresses other motions that are not at relevant to the Motion currently before this Court.

[5] The 7/23/12 Dismissal Order is available at 2012 WL 3012643.

9

id. at *8.

On October 30, 2012, Chief Judge Mollway issued an entering order finding that the case should be stayed pending the disposition of the appeal before the Hawai`i Supreme Court in Lales v. Wholesale Motors Co. ("10/30/12 EO").[6] [Dkt. no. 430.] The stay was to take effect after she ruled on a pending appeal of one of the magistrate judge's orders. On January 17, 2013, after she resolved the magistrate appeal, Chief Judge Mollway issued an EO noting that the stay ordered in the 10/30/12 EO was in full effect. [Dkt. no. 444.]

The Hawai`i Supreme Court issued its opinion in Lales on February 13, 2014. 133 Hawai`i 332, 328 P.3d 341. It held that "[i]ndividual employees are . . . not personally liable as 'employers' for harassment and retaliation claims under HRS §§ 378-2(1)(A) and 378-2(2)." Id. at 334, 328 P.3d at 353. It did not reach the issue of individual liability under § 378-2(3), noting that Lales did not raise such a claim in his amended complaint and did not raise the issue of whether such a claim was cognizable in either his responses to the defendants' motions for summary judgment or in the appeal before the ICA. Id. at 333 n.9, 328 P.3d at 352 n.9.

---

[6] The Hawai`i Intermediate Court of Appeals ("ICA") issued its opinion in Lales on May 9, 2012. 2012 WL 1624013. On October 9, 2012, the Hawai`i Supreme Court accepted the defendants' application for a writ of certiorari. 2012 WL 4801373.

10

On May 14, 2014, this Court lifted the stay ordered in the 10/30/12 EO. [Dkt. no. 455.]

In the instant Motion, the City asks this Court to stay the instant case pending the resolution of the appeal in Bennett-Bagorio, et al. v. City & County of Honolulu, et al., CV 13-00071 DKW-KSC ("Bennett-Bagorio"). The City argues that Plaintiffs filed Bennett-Bagorio to circumvent the denial of the Motion to Amend in the instant case.[7] According to the City, the First Amended Complaint for Compensatory, Statutory and Punitive Damages in Bennett-Bagorio ("the Bennett-Bagorio Complaint"), [Bennett-Bagorio, filed 2/20/13 (dkt. no. 5),[8]] asserts the same claims that Plaintiffs sought to add in the instant case through the Motion to Amend. [Mem. in Supp. of Motion at 2.]

In Bennett-Bagorio, United States District Judge Derrick K. Watson dismissed the case with prejudice, finding the Bennett-Bagorio Complaint to be duplicative of the instant case. [Bennett-Bagorio, Order Granting Defendant City and County of Honolulu's Motion to Strike and/or Dismiss First Amended

---

[7] Plaintiffs are the only plaintiffs in Bennett-Bagorio, and they are represented by the same attorneys who are representing them in the instant case. The defendants in Bennett-Bagorio are: the City; D. Scott Dodd, Defendants' former counsel in the instant case; Carrie K.S. Okinaga and Robert C. Godbey - Mr. Dodd's supervisors; Kealoha; Correa; Kajihiro; Major Kerry Inouye; Lieutenant Carolyn Onaga; Lieutenant Yvonne Bolton; HPD Detective Randall Gratz; and Tsukayama.

[8] Plaintiffs filed the original complaint in Bennett-Bagorio on February 11, 2013.

11

Complaint and Denying the Motion for Sanctions, filed 1/28/14 (dkt. no. 66) ("Bennett-Bagorio Dismissal Order").[9]] The Clerk's Office entered final judgment on January 29, 2014, and Plaintiffs filed a Notice of Appeal on February 27, 2014. [Id., (dkt. nos. 67, 68).] The City filed its Notice of Cross-Appeal on March 11, 2014, appealing the denial of sanctions. [Id. (dkt. no. 73).]

In the instant Motion, the City represents that the Bennett-Bagorio appeals remain pending before the Ninth Circuit, and it asks this Court to stay the instant case until the resolution of the Bennett-Bagorio appeal. [Mem. in Supp. of Motion at 2-3.]

## **DISCUSSION**

In an analogous situation involving the defendant's and third-party-defendant's request to stay the case pending the resolution of a related state court case, this district court stated:

> "[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." Landis v. N. Am. Co., 299 U.S. 248, 254, 57 S. Ct. 163, 81 L. Ed. 153 (1936). See Leyva v. Certified Grocers of Cal., Ltd., 593 F.2d 857, 864 (9th Cir. 1979) ("[T]he court may order a stay of [an] action pursuant to its power to control its docket and

---

[9] The Bennett-Bagorio Dismissal Order is available at 2014 WL 296860.

> calendar and to provide for a just determination of the cases pending before it."). . . .

Ill. Nat'l Ins. Co. v. Nordic PCL Constr., Inc., Civil No. 11-00515 SOM/KSC, 2012 WL 1492399, at *20 (D. Hawai`i Apr. 26, 2012) (some alterations in Nordic PCL).

Similarly, the United States District Court for the Southern District of California has stated:

> For the sake of judicial economy, such a stay may be granted pending the outcome of other legal proceedings related to the case. Leyva v. Certified Grocers of Cal., Ltd., 593 F.2d 857, 863-64 (9th Cir. 1979). Such discretion is appropriately used when the resolution of another matter will have a direct impact on the issues before the court, substantially simplifying issues presented. Mediterranean Enters. v. Ssangyong Corp., 708 F.2d 1458 (9th Cir. Cal. 1983); San Diego Padres Baseball P'ship v. United States, 2001 WL 710601, at *1 (S.D. Cal. May 10, 2001).
>
> The district court's determination of whether a stay is appropriate, "must weigh competing interests and maintain an even balance." Landis, 299 U.S. at 254-55. The Ninth Circuit has noted that these competing interests include:
>
>> the possible damage which may result from the granting of a stay, the hardship or inequity which a party may suffer in being required to go forward, and the orderly course of justice mea-sured [sic] in terms of the simplifying or complicating of issues, proof, and questions of law which could-be expected to result from a stay.
>
> CMAX, Inc. v. Hall, 300 F.2d 265, 268 (9th Cir. 1962) (citing Landis, 299 U.S. at 254-55). . . .

Karoun Dairies, Inc. v. Karlacti, Inc., Civil No. 08cv1521 AJB (WVG), 2013 WL 4716202, at *2 (S.D. Cal. Sept. 3, 2013).

## I. Prejudice if a Stay is Granted

In the instant case, this Court finds that there is significant prejudice that may result if this Court grants a stay. Plaintiffs filed this action over four-and-a-half years ago. Trial is currently set for September 15, 2015. Defendants argue that a stay will not prejudice Plaintiffs, who are only seeking monetary relief. The fact that Plaintiffs are not seeking injunctive relief does not negate Plaintiffs' interest in obtaining relief within a reasonable time. For example, Delgadillo seeks monetary damages for, *inter alia*, his constructive discharge in 2011, and Bennett-Bagorio seeks monetary damages for, *inter alia*, serious physical injuries that she suffered in 2010. The current trial date is more than five years after Plaintiffs filed this case, and to ask Plaintiffs to resolve their claims and potentially obtain redress for their injuries is unreasonable.[10] Further, if this case is delayed by another stay, all parties may be prejudiced by potential loss of witnesses and other evidence due to the passage of time. This Court therefore finds that the first CMAX factor weighs against a stay.

---

[10] This Court recognizes that the delay caused by the stay related to the Lales appeal was beyond the parties' control.

**II. Prejudice if a Stay is Denied**

The City argues that it will be prejudiced if the Court denies a stay because, if the Ninth Circuit reverses the Bennett-Bagorio Dismissal Order and remands that case for further proceedings, there will be two cases involving substantially the same parties and related events, but the two cases will be litigated on two completely different schedules. The City argues that this places the parties at risk of inconsistent and/or duplicative rulings in the two cases. The City also argues that allowing the cases to proceed separately will result in the duplicative use of the parties' and the Court's resources. Instead, the City asserts that this Court should stay the instant case so that, if the Ninth Circuit reverses the Bennett-Bagorio Dismissal Order, the two cases can proceed together.

Trial in this case is not scheduled until approximately a year from now, and the Ninth Circuit may resolve the Bennett-Bagorio appeal well before then. Thus, even without a stay in the instant case, it may still be possible to consolidate the two cases if the Ninth Circuit reverses the Bennett-Bagorio Dismissal Order. Even if consolidation is not possible, the City may be able to avoid inconsistent and/or duplicative rulings by invoking the doctrines of *res judicata* and collateral estoppel. However, this Court emphasizes that these arguments will be moot if the Ninth Circuit affirms the Bennett-Bagorio Dismissal Order.

The City also points out that, before Plaintiffs alleged in Bennett-Bagorio that certain attorneys from the Corporation Counsel's office were involved in the conspiracy to discriminate and retaliate against Plaintiffs, the Corporation Counsel's office represented Defendants in this case. In light of the conspiracy allegations, the City has since retained private counsel for various groups of Defendants. This has significantly increased Defendants' expenses. The Court, however, does not find the City's increase in litigation expenses to be particularly persuasive. This Court finds that the second CMAX factor weighs only slightly in favor of a stay.

### III. **Orderly Course of Justice**

The Bennett-Bagorio appeal does not present any factual or legal issues that will control the result of the instant case. The crux of the City's argument for a stay is that the two cases should be consolidated if Plaintiffs prevail in the Bennett-Bagorio appeal. As stated, *supra*, consolidation may be possible even if this Court denies the City's request for a stay. Further, if the Ninth Circuit affirms the Bennett-Bagorio Dismissal Order, that appeal will have no effect on the instant case. This Court therefore finds that the third CMAX factor weighs against a stay.

Having considered all of the competing interests, this Court FINDS that a stay of this case pending the resolution of

the Bennett-Bagorio appeal is not warranted.

## CONCLUSION

On the basis of the foregoing, the City's Motion to Stay Pending Resolution of 9th Circuit Appeal in Related Case, filed May 29, 2014, is HEREBY DENIED.

IT IS SO ORDERED.

DATED AT HONOLULU, HAWAII, September 30, 2014.



   /s/ Leslie E. Kobayashi
Leslie E. Kobayashi
United States District Judge

**SERGEANT SHERMON DEAN DOWKIN, ET AL. VS. THE CITY AND COUNTY OF HONOLULU, ET AL; CIVIL 10-00087 LEK-RLP; ORDER DENYING DEFENDANT CITY AND COUNTY OF HONOLULU'S MOTION TO STAY PENDING RESOLUTION OF 9TH CIRCUIT APPEAL IN RELATED CASE**