IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

SERGEANT SHERMON DEAN DOWKIN, )   CIVIL 10-00087 LEK-RLP
OFFICER FEDERICO DELGADILLO      )
MARTINEZ, JR., and OFFICER       )
CASSANDRA BENNETT HUIHUI,        )
                                 )
            Plaintiffs,          )
                                 )
       vs.                       )
                                 )
THE CITY AND COUNTY OF           )
HONOLULU, FORMER CHIEF OF        )
POLICE BOISSE CORREA,            )
CURRENT CHIEF OF POLICE          )
LOUIS KEALOHA, ASSISTANT         )
CHIEF MICHAEL TAMASHIRO,         )
MAJOR KENNETH SIMMONS,           )
MAJOR JOHN MCENTIRE,             )
CAPTAIN NYLE DOLERA,             )
LIEUTENANT MICHAEL SERRAO,       )
LIEUTENANT DAN KWON,             )
LIEUTENANT WILLIAM AXT,          )
SERGEANT WAYNE FERNANDEZ,        )
SERGEANT RALSTAN TANAKA,         )
OFFICER COLBY KASHIMOTO,         )
PAT AH LOO,                      )
                                 )
            Defendants.          )
_____  )

**ORDER REGARDING DEFENDANTS' MOTIONS FOR
SUMMARY JUDGMENT AND JOINDERS THERETO**

Before the Court are the following motions, all filed

on April 15, 2015: (1) Defendant Lieutenant William Axt's ("Axt")

Motion for Partial Summary Judgment Against Plaintiff Sergeant

Shermon Dean Dowkin on the Fifth Cause of Action of the Third

Amended Complaint (Intentional Infliction of Emotional Distress)

("Axt IIED Motion"); (2) Defendants Sergeant Ralstan Tanaka

("Tanaka") and Officer Colby Kashimoto's ("Kashimoto") Motion for

Summary Judgment Regarding Punitive Damages and Any Other

Outstanding Claims ("Tanaka & Kashimoto Punitive Damages

Motion"); (3) Defendants Lieutenant Dan Kwon ("Kwon") and

Sergeant Wayne Fernandez's ("Fernandez") Motion for Partial

Summary Judgment Against All Plaintiffs on the Third Cause of

Action in the Third Amended Complaint (Violations of the Hawaii

Civil Rights Law - HRS Section 378-2(3)) ("Kwon & Fernandez

§ 378-2(3) Motion");[1] and (4) Kwon and Fernandez's Motion for

Summary Judgment as to Punitive Damages ("Kwon & Fernandez

Punitive Damages Motion," all collectively, "Motions"). [Dkt.

nos. 586, 588, 591, 593.] Defendant the City and County of

Honolulu ("the City") filed a joinder in each motion on April 21,

2015. [Dkt. nos. 603-06.]

Plaintiffs Sergeant Shermon Dean Dowkin ("Dowkin"),

Frederico Delgadillo Martinez, Jr. ("Delgadillo"), and Cassandra

Bennett Huihui[2] ("Bennett Huihui," collectively "Plaintiffs")

filed a memorandum in opposition to each motion on June 15, 2015.

[Dkt. nos. 686, 689, 682, 684.] Axt, Tanaka and Kashimoto, and

Kwon and Fernandez filed their respective replies on June 22,

_____

[1] What was Haw. Rev. Stat. § 378-2(3) at the time Plaintiffs
filed their charges of discrimination, is now Haw. Rev. Stat.
§ 378-2(a)(3). The instant Order applies the version in effect
at the time of the alleged violations and the filing of the
charges.

[2] Prior to November 7, 2014, Bennett Huihui was referred to
in the case as Cassandra Bennett-Bagorio. [Dkt. no. 483.]

2015.  [Dkt. nos. 698, 695, 697, 696.]

These matters came on for hearing on July 6, 2015.
After careful consideration of the Motions, supporting and
opposing memoranda, and the arguments of counsel, this Court
rules as follows: the Axt IIED Motion is HEREBY GRANTED; the
Tanaka & Kashimoto Punitive Damages Motion is HEREBY GRANTED IN
PART AND DENIED IN PART; the Kwon & Fernandez § 378-2(3) Motion
is HEREBY DENIED; and the Kwon & Fernandez Punitive Damages
Motion is HEREBY DENIED.

### BACKGROUND

The general factual and procedural background of this
case is set forth in this Court's May 1, 2015 order addressing
four previous defense motions for summary judgment ("5/1/15
Order").  [Dkt. no. 615.]  This Court will only repeat the
background that is relevant to the Motions currently before it.

### I.    Axt IIED Motion

Count V, Plaintiffs' intentional infliction of
emotional distress ("IIED") claim, alleges that, "[b]y committing
the acts and omissions" that Plaintiffs allege, "Defendant Axt
inflicted emotional distress on Plaintiffs Dowkin and
Delgadillo."  [Third Amended Complaint for Compensatory,
Statutory and Punitive Damages ("Third Amended Complaint"), filed
1/17/12 (dkt. no. 221), at ¶ 167.]

The Axt IIED Motion contends that Dowkin and Delgadillo have not presented any evidence to establish that Axt engaged in the type of outrageous conduct necessary to support an IIED claim. Axt notes that paragraph 112 of the Third Amended Complaint provides a list of dates on which Dowkin and/or Delgadillo were allegedly denied back-up cover when Axt was on-duty or otherwise available. However, during his deposition, Dowkin testified that he has no independent recollection of the denials of cover that the Third Amended Complaint alleges occurred on: February 22 and 29, 2008; March 8, 16, and 26, 2008; April 19, 2008; and June 7, 2008. [Separate & Concise Statement of Facts in Supp. of Axt IIED Motion ("Axt's IIED CSOF"), filed 4/15/15 (dkt. no. 587), Decl. of Jerold T. Matayoshi ("Matayoshi Decl."), Exh. A (Excerpts of Trans. of 4/4/11 Depo. of Shermon Dowkin ("Axt's Dowkin Depo.")) at 243-44, 246-49, 253-254, 258.] Dowkin's deposition testimony also indicates that, during some of these incidents, Delgadillo or another officer arrived on the scene to provide back-up cover or other assistance to Dowkin. [Id. at 244-50, 254-55.] Moreover, even assuming, *arguendo*, that there was a denial of back-up cover, Plaintiffs have failed to present any evidence that Axt was responsible for those incidents. Axt argues that the mere fact that he was on-duty when an alleged failure to provide cover occurred is not enough for Dowkin's IIED claim to survive summary judgment.

As to Delgadillo, Axt emphasizes that Delgadillo testified that he had no independent recollection of the alleged failure to cover incidents on February 22 and 29, 2008, April 6, 2008, and June 7, 2008. [Matayoshi Decl., Exh. B (Excerpts of Trans. of 4/6/11 Depo. of Officer Federico Delgadillo Martinez, Jr. ("Axt's Delgadillo Depo.")) at 65-66, 105-07, 157.] Delgadillo testified that he covered Dowkin during the April 6, 2008 alleged incident, and several times on June 7, 2008. However, he could not recall if he covered Dowkin on the specific June 7 back-up calls at issue in this case. [Id. at 65-66, 157-59.] Axt argues that, as with Dowkin's allegations of failure to provide back-up cover, there is no evidence that he was directly responsible.

Dowkin and Delgadillo also testified that Axt: subjected them to unfair enforcement of Honolulu Police Department ("HPD") rules and other unfair internal orders; gave Dowkin poor performance ratings that he did not deserve; pressured Delgadillo not to complain about undeserved performance ratings by Fernandez; and transferred or threatened to transfer them in retaliation for their complaints. Axt argues that these do not rise to the level of outrageous conduct necessary to support an IIED claim.

## II. **Tanaka & Kashimoto Punitive Damages Motion**

Tanaka and Kashimoto emphasize that the only claims against them in the Third Amended Complaint are: Count III, Plaintiffs' claim pursuant to Haw. Rev. Stat. § 378-2(3); Count V, Plaintiffs' IIED claim; and Count VI, Bennett Huihui's negligent infliction of emotional distress ("NIED") claim against Tanaka. The Third Amended Complaint seeks punitive damages against Tanaka and Kashimoto, among others. In light of the 5/1/15 Order, the following claims remain: Bennett Huihui's IIED claim against Tanaka based on the Porky's Incident; Dowkin's IIED claim against based on the April 6, 2008 incident; and Dowkin's IIED claim against Kashimoto based on the October 11, 2010 incident.[3]

Tanaka and Kashimoto argue that Delgadillo has no remaining claims against either of them, and Bennett Huihui has no remaining claims against Kashimoto. Thus, they argue that this Court should grant this motion as to Delgadillo's request for punitive damages against Tanaka and as to Bennett Huihui's and Delgadillo's request for punitive damages against Kashimoto. Tanaka and Kashimoto also argue that, as to the remaining claims against them, they are entitled to summary judgment on the request for punitive damages because Plaintiffs have not

---

[3] In the 5/1/15 Order, this Court described: the Porky's Incident at pages 6 and 10 to 13; the April 6, 2008 incident at page 15; and the October 11, 2010 incident at pages 16-18.

identified evidence that constitutes clear and convincing evidence that Tanaka and Kashimoto "acted wantonly or oppressively or with such malice as implies a spirit of mischief or criminal indifference to civil obligations." [Tanaka & Kashimoto Punitive Damages Reply at 11 (internal quotation marks omitted).]

### III. <u>Kwon & Fernandez § 378-2(3) Motion</u>

The Kwon & Fernandez § 378-2(3) Motion first argues that they are entitled to summary judgment as to Count III because Plaintiffs failed to exhaust their administrative remedies. The arguments that they raise are the same as those addressed in the 5/1/15 Order, which granted summary judgment to Tanaka and Kashimoto as to the claims in Count III against them. Plaintiffs raise the same arguments that they raised in their opposition to Tanaka and Kashimoto's motion for summary judgment as to Count III. However, they note that, unlike Tanaka and Kashimoto, Kwon and Fernandez were named within the factual statements of Plaintiffs' charges of discrimination.

Kwon and Fernandez also argue that, even if this Court concludes that Plaintiffs properly exhausted their § 378-2(3) claims against them, Kwon and Fernandez are still entitled to summary judgment because Plaintiffs have not presented evidence to establish necessary elements of their claims.

**IV.** **Kwon & Fernandez Punitive Damages Motion**

Kwon and Fernandez emphasize that, in its June 18, 2015 Order Granting Defendants' Motions for Summary Judgment and Joinders Thereto ("6/18/15 Order"), this Court granted summary judgment in their favor as to Counts V and VI. [Dkt. no. 692.[4]] They argue that, if this Court also grants the Kwon & Fernandez § 378-2(3) Motion, this Court will have granted summary judgment in their favor as to all claims against them, and it should also grant summary judgment as to Plaintiffs' request for punitive damages against them. Even if this Court denies the Kwon & Fernandez § 378-2(3) Motion, they argue that this Court should still grant summary judgment in their favor as to Plaintiffs' request for punitive damages. They contend that Plaintiffs have not shown that there is admissible evidence that they acted "wantonly, oppressively, and/or with malice or such want of care that would raise the presumption of conscious indifference to consequences." [Kwon & Fernandez Punitive Damages Reply at 3.]

**DISCUSSION**

**I.** **Axt IIED Motion**

The standards that this Court must apply to Plaintiffs' IIED claims are set forth in the 5/1/15 Order. In that order, this Court found that, "if Plaintiffs can prove that Tanaka denied Bennett Huihui and/or Dowkin back-up cover for

---

[4] The 6/18/15 Order is also available at 2015 WL 3822282.

8

discriminatory and/or retaliatory purposes, reasonable people
could differ as to the question of whether this constitutes
outrageous conduct sufficient to support an IIED claim, and the
issue must be determined by the jury." 5/1/15 Order at 42
(footnote omitted) (citing <u>Young v. Allstate Ins. Co.</u>, 119
Hawai`i 403, 429, 198 P.3d at 666, 692 (2008)).[5] Thus, if
Plaintiffs can present evidence which raises a genuine issue of
fact as to whether Axt denied Dowkin and/or Delgadillo back-up
cover for discriminatory and/or retaliatory purposes, those
portions of their IIED claim may proceed to trial. <u>See</u> Fed. R.
Civ. P. 56(a) (stating that a party is entitled to summary
judgment "if the movant shows that there is no genuine dispute as
to any material fact and the movant is entitled to judgment as a
matter of law").

In support of the Axt IIED Opposition, Plaintiffs
submitted an affidavit by Dowkin, an affidavit by Delgadillo, and
excerpts of their deposition transcripts. [Pltfs.' Separate
Concise Statement of Facts in Supp. of Axt IIED Opp. ("Pltfs.'
Axt IIED CSOF"), filed 6/15/15 (dkt. no. 690), Aff. of Shermon
Dean Dowkin ("Dowkin Aff."); <u>id.</u>, Aff. of Federico Delgadillo

_____

[5] In <u>Young</u>, the Hawai`i Supreme Court stated: "The question
whether the actions of the alleged tortfeasor are unreasonable or
outrageous is for the court in the first instance, although where
reasonable people may differ on that question it should be left
to the jury." 119 Hawai`i at 429, 198 P.3d at 692 (citation and
quotation marks omitted).

Martinez, Jr. ("Delgadillo Aff."); id., Decl. of Counsel ("Bennett Axt IIED Decl."), Exh. A (Excerpts of Trans. of 4/4/11 and 4/5/11 Depo. of Shermon Dowkin ("Pltfs.' Dowkin Depo.")); Bennett Axt IIED Decl., Exh. B (Excerpts of Trans. of 4/6/11 Depo. of Officer Federico Delgadillo Martinez, Jr. ("Pltfs.' Delgadillo Depo.")).] The Dowkin Affidavit and the Delgadillo Affidavit are both dated in February 2015, and neither address the claims against Axt. Thus, the affidavits do not support a triable issue of fact as to the IIED claims against Axt.

### A.   **Axt as a Supervisor**

Dowkin testified that Axt was his immediate supervisor beginning in January 2008. [Pltfs.' Dowkin Depo. at 54-55.] Axt does not dispute this. Although Plaintiffs acknowledge the prior rulings that this Court has made regarding their IIED claims against other defendants, they argue that Axt "should be held to a higher standard" because he is a supervisor. [Axt IIED Opp. at 10.] They assert that "'[e]vidence of discriminatory animus exhibited by an individual who influenced or participated in the decision making process is sufficient to overcome summary judgment.'" [Id. (quoting Dominguez-Curry v. Nev. Transp. Dep't, 424 F.3d 1027, 1040 n.5 (9th Cir. 2005)).] Plaintiffs' argument is misplaced. Dominguez-Curry involved an appeal from the grant of summary judgment in favor of the defendants on Title VII claims alleging a hostile work environment and a failure to

promote.  See 424 F.3d at 1042.  There was no IIED claim.  Thus,

Dominguez-Curry does not support Plaintiffs' proposition that the

threshold for their IIED claims against Axt to survive summary

judgment is lower than the threshold for their IIED claims

against other Defendants.

At the hearing on the Motions, Plaintiffs' counsel

argued that Dowkin and Delgadillo can base their IIED claims

against Axt upon the actions of Axt's subordinates.  Plaintiffs,

however, cite no legal authority to support this proposition.  In

order to be held liable for IIED, Axt must have committed an act

that, *inter alia*, was intentional or reckless.  See Young, 119

Hawai`i at 429, 198 P.3d at 692.  This requires that:

> the defendant acted either with a "desire to
> inflict severe emotional distress, . . . where he
> knows that such distress is certain, or
> substantially certain, to result from his conduct"
> or "recklessly . . . in deliberate disregard of a
> high degree of probability that the emotional
> distress will follow."  Restatement (Second) Torts
> Section 46, cmt. i (1965).
>
> Recklessness, unlike negligence, involves
> more than "inadvertence, incompetence,
> unskillfulness, or a failure to take precautions"
> but instead rises to the level of a "conscious
> choice of a course of action . . . with knowledge
> of the serious danger to others involved in it."
> See Restatement (Second) Torts, § 500, cmt. g.  As
> is clear, context matters in determining if
> conduct is reckless.

Ritchie v. Wahiawa Gen. Hosp., 597 F. Supp. 2d 1100, 1110 (D.

Hawai`i 2009) (alterations in Ritchie) (some citations omitted).

Plaintiffs cannot establish this type of intentional or reckless

act by merely proving that Axt was the supervisor of the individuals who allegedly caused Dowkin and/or Delgadillo extreme emotional distress. In order for Dowkin and Delgadillo's IIED claims against Axt to survive summary judgment, Plaintiffs must identify evidence which creates a genuine issue of fact as to whether Axt was personally involved in the act which caused the extreme emotional distress or he engaged in an intentional or reckless act that caused or allowed another person to commit the act which caused the extreme emotional distress.

### B. Denial of Back-up Cover

Based on Plaintiffs' own evidence, Axt was not the defendant who ordered other officers not to help the driving under the influence ("DUI") team.[6] According to Dowkin, he heard from Delgadillo, Bennett Huihui, and other officers that Fernandez ordered officers not to help the DUI team. [Pltfs.' Dowkin Depo. at 63-64.] Dowkin has also stated that: "It was Officer Kashimoto who would be working and ensuring that the order to not cover off or provide back up for me and Officer Delgadillo was carried out at all times." [Dowkin Aff. at ¶ 33.]

---

[6] Plaintiffs allege that: "In 2003, Sgt. Dowkin was assigned to head an elite team to enforce DUI laws in District 4, which would require Sgt. Dowkin and the officers on his team to make potentially dangerous traffic stops of individuals under the influence of drugs and/or alcohol." [Third Amended Complaint at ¶ 37.] Delgadillo worked under Dowkin as a DUI team officer. [Id. at ¶ 40.]

### 1.  **Failure to Respond to Denial of Cover Incidents**

Plaintiffs apparently argue that Dowkin informed Axt about the denial of back-up cover to the DUI team, but Axt failed to respond appropriately.  Dowkin testified that he met with Axt around January 8, 2008 to discuss the issue, and Axt responded by asking Dowkin if he had ever had Criminal Investigations Division ("CID") training.  [Pltfs.' Dowkin Depo. at 56-57.]  Later that night, Dowkin had a second meeting with Axt, and Axt said "they" were considering transferring Dowkin to CID for training because he "was disruptive to the watch."  [Id. at 58, 60.]  Dowkin construed this as a threat that he would be punished if he complained about the denial of back-up cover.  [Id. at 61-62, 123, 139.]  In particular, he construed it as a threat by Axt because Axt was "part of the command staff or the hierarchy." [Id. at 131.]

First, Plaintiffs have not presented any evidence which suggests that Axt was responsible for ensuring that other officers provided back-up cover to the DUI team each time a member of the team requested cover.  Dowkin merely testified that, in general, if an officer notifies HPD dispatch that he or she needs cover for a traffic stop, "their procedure is to automatically send cover unless the officer canceled cover." [Id. at 137.]  Second, even if it could be reasonably inferred from Axt's position that he was responsible for acting upon

13

Dowkin's report on January 8, 2008, Plaintiffs have not presented evidence which raises a triable issue of fact that Axt failed to respond appropriately.

Dowkin has asserted that, after he reported the denial of cover issue to Axt on January 8, 2008, Axt threatened to send him to CID training to dissuade him from complaining about the denial of cover issue. [Pltfs.' Dowkin Depo. at 56-58, 60-62, 123, 139.] First, Plaintiffs have presented no evidence, other than Dowkin's testimony, that the CID training was a form of punishment or disincentive that was intended to dissuade him from reporting denials of back-up cover. Further, based on Dowkin's deposition testimony, he merely **assumed** that Axt made the perceived threat based on Axt's position in the HPD chain of command. See id. at 131.

The only other evidence about what action Axt took in response to the issue is the following testimony regarding a meeting on January 9, 2008:

> Q    . . . It says that you were summoned to attend a meeting with Lieutenant Axt, Lieutenant Kwon and Sergeant Fernandez, is that correct?
>
> A    Yes.
>
> Q    Okay.  And then at this meeting you claim that Sergeant Fernandez ordered another officer not to cover you off, correct?
>
> A    In this meeting, yes.
>
> Q    This is the incident you testified about where Officer Delgadillo had [an unauthorized

control of a propelled vehicle] case at The Shack
and Sergeant Fernandez told him to go to The
Shack?

  A On the radio, yes.

  Q Okay.  And Lieutenant Axt took this
allegation very seriously, didn't he?

  A He called a meeting right away.  So I
guess that's pretty serious.

  Q And he requested that to-froms
[memoranda] be created to document this, correct?

  A No.  Lieutenant Kwon requested it.  He
requested - Lieutenant Kwon requested officer
Delgadillo submit a to-from explaining his
accusation that Sergeant Fernandez had ordered
officers not to cover the DUI team.

[Pltfs.' Dowkin Depo. at 227-28.]  Thus, even viewing the record

in the light most favorable to Plaintiffs,[7] the available

evidence merely establishes that, after being notified of the

denial of cover issue, Axt took a report of a specific incident

seriously.  Axt and another lieutenant called a meeting right

away and ordered that the incident be documented.  This Court

finds that the record before it does not create a genuine issue

of fact as to the issue of whether Axt's response to Dowkin's

report regarding the denial of back-up cover constituted

---

   [7] This district court has stated that, in considering a
motion for summary judgment, "[a]ll evidence and inferences must
be construed in the light most favorable to the nonmoving party."
Maui Elec. Co. v. Chromalloy Gas Turbine, LLC, Civil No. 12-00486
SOM-BMK, 2015 WL 1442961, at *4 (D. Hawai`i Mar. 27, 2015)
(citing T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n,
809 F.2d 626, 631 (9th Cir. 1987)).

outrageous conduct that would support an IIED claim.

This Court therefore GRANTS the Axt IIED Motion as to the portion of Dowkin's and Delgadillo's IIED claims against Axt based upon his response to his subordinates' alleged failure to provide back-up cover to Dowkin and Delgadillo.

## 2. __Axt's Failure to Provide Cover__

In addition, Dowkin and Delgadillo each allege that there were specific incidents when he was denied back-up cover and that Axt was on-duty during those times, but Axt personally failed to provide cover.  Plaintiffs allege that:

> Specific instances of the failures to cover are as follows:
>
> On February 22, 2008; February 29, 2008; March 8, 2008, at which time Lt. Axt was the officer on duty; March 16, 2008, March 26, 2008, at which time Lt.'s. Axt and Kwon and Sgt. Fernandez were on duty; April 6, 2008, at which time Lt. Axt and Sgt. Tanaka were on duty; April 19, 2008, Sgt. Dowkin was not provided with backup cover for a traffic stop and arrest, despite his request for same, at which time Lt. Axt and Sgt. Tanaka were on duty; on two occasions on June 7, 2008, Sgt. Dowkin and Ofc. Delgadillo were not provided with assistance in the field or at the station, and on another occasion on June 7, 2008, Sgt. Dowkin was not provided with backup in the field or assistance at the station, at which time Lt. Axt and Sgt. Fernandez were on duty; twice on July 30, 2008, Sgt. Dowkin was not provided with backup cover at which time Lt. Axt, Sgt. Fernandez and Ofc. Kashimoto were on duty . . . .

[Third Amended Complaint at ¶ 112.]

16

### a.  **Dowkin's IIED Claim**

During his deposition, Dowkin testified that he has no
independent recollection of the alleged denials of back-up cover
on February 22 and 29, 2008, March 8, 16, and 26, 2008, April 19,
2008, and June 7, 2008.  Even viewing the incident reports did
not refresh his recollection; he had to rely on the contents of
the report.  [Axt's Dowkin Depo. at 243-44, 246-49, 253-254,
258.]  Plaintiffs, however, did not submit the incident reports
with Plaintiffs' Axt CSOF.  There is no evidence in the current
record regarding the alleged denial of back-up cover on July 30,
2008.  Since Dowkin has presented no evidence establishing a
failure to provide back-up cover, this Court finds that, even
viewing the record in the light most favorable to him, Dowkin has
failed to establish a prima facie case for the portion of his
IIED claim based on the alleged discriminatory and/or retaliatory
denial of back-up cover on February 22 and 29, 2008, March 8, 16,
and 26, 2008, April 19, 2008, and July 30, 2008.  Accord 5/1/15
Order at 37-38 (addressing similar failure of proof regarding
Delgadillo's IIED claim against Tanaka).

Although Dowkin stated that he did not have an
independent recollection of the incident on June 7, 2008, and
Plaintiffs did not provide this Court with the report regarding
the incident, Dowkin gave other testimony regarding this
incident, and Plaintiffs filed a copy of the internal complaint

that Dowkin submitted stating that he was denied cover on that day. [Pltfs.' Dowkin Depo. at 134-37; Exh. 6,[8] filed 6/24/15 (dkt. no. 699-6) (memorandum dated 7/9/08 to Boisse P. Correa, Chief of Police, from Dowkin).] According to Dowkin, on June 7, 2008, he informed the police dispatcher that he was conducting a traffic stop on Ululani Street and Ulupii Street in Kailua, and he provided the location and the vehicle's license plate number. [Pltfs.' Dowkin Depo. at 134-35; Exh. 6 at 1.] Dowkin testified that, although he did not tell the dispatcher that he needed back-up cover, it was "a given." [Pltfs.' Dowkin Depo. at 135.] According to Dowkin, there were "[n]umerous officers in the Kailua and Waimanalo area [who] proceeded to [a] fire call." [Exh. 6 at 1.] He asserts that, if they "were available for the fire call, then someone should have covered [him] off on [his] traffic stop." [Id.] Axt was one of the officers who responded to the fire call. [Pltfs.' Dowkin Depo. at 136.]

Even construing the record in the light most favorable to Plaintiffs, the mere fact that Axt responded to a fire call instead of providing back-up cover for Dowkin's traffic stop does not create a genuine issue of fact that Axt's failure to provide

---

[8] Exhibit 6 was part of a filing titled Exhibit 1-7 to Plaintiffs' Concise Statement of Facts in Support of Plaintiffs' Memorandum in Opposition to [ECF No. 578] Defendant City and County of Honolulu's Motion for Partial Summary Judgment Re: Fourth Cause of Action of Third Amended Complaint (Negligent Training, Negligent Retention, Failure to Report and Investigate) [ECF No. 651].

back-up cover was discriminatory or retaliatory. Further, this
Court finds that reasonable minds could not differ on the issue
of whether Axt's failure to provide cover was so outrageous as to
support an IIED claim.

This Court therefore GRANTS the Axt IIED Motion as to
the portion of Dowkin's IIED claim against Axt based on the
discriminatory and/or retaliatory denial of back-up cover on
February 22 and 29, 2008, March 8, 16, and 26, 2008, April 19,
2008, June 7, 2008, and July 30, 2008.

Dowkin testified that he has an independent
recollection of the April 6, 2008 arrest when he was denied back-
up cover while Axt and Tanaka were on duty. In addition, Dowkin
stated that he has a video recording of this arrest which clearly
shows that he called for cover and no one came. [Axt's Dowkin
Depo. at 254-55.] Axt emphasizes that Dowkin acknowledged during
his deposition that Delgadillo provided him with adequate cover
during this arrest. [Axt's IIED CSOF at ¶ 18.] However, Dowkin
explained that Delgadillo was not on patrol at the time, and the
patrol officers failed to cover them. [Axt's Dowkin Depo. at
254-55.] This Court, however, has previously found that
Delgadillo's cover for Dowkin did not necessarily excuse other
officers from providing cover. [5/1/15 Order at 40.] This Court
has also found that, if Plaintiffs can prove that one of the
individual Defendants denied Dowkin "back-up cover for

discriminatory and/or retaliatory purposes, reasonable people could differ as to the question of whether this constitutes outrageous conduct sufficient to support an IIED claim, and the issue must be determined by the jury." [Id. at 42 (footnote and citation omitted).]

In order for Dowkin's IIED claim based on the April 6, 2008 incident to survive summary judgment, he must, *inter alia*, raise a genuine issue of fact as to whether Axt intentionally or recklessly denied Dowkin back-up cover. The only evidence in the record addressing Axt's involvement in the incident is Dowkin's testimony that Axt was on duty when the traffic stop occurred. [Axt's Dowkin Depo. at 254.] There is no evidence that, for example, Axt heard the dispatcher report that Dowkin needed cover for a traffic stop, and Axt was expected to provide cover because he was the closest available officer. There is no indication in the record that Axt was even aware of Dowkin's traffic stop at that time. The mere fact that Axt was on-duty at the time of the alleged denial of back-up cover on April 6, 2008 is not sufficient to raise a genuine issue of fact as to whether Axt intentionally or recklessly denied Dowkin cover.

This Court therefore FINDS that there are no genuine issues of material fact regarding Axt's involvement in the April 6, 2008 incident, and CONCLUDES that Axt is entitled to judgment as a matter of law as to that portion of Dowkin's IIED

claim.

### b. **Delgadillo's IIED Claim**

Delgadillo testified that he had no independent recollection of the alleged failure to cover incidents on February 22 and 29, 2008, April 6, 2008, and June 7, 2008. [Axt's Delgadillo Depo. at 65-66, 105-07, 157.] As noted, *supra*, Plaintiffs did not submit reports about these traffic stops. Further, there is no evidence in the current record which would establish any of the other incidents that are alleged in the Third Amended Complaint when Delgadillo was denied back-up cover for discriminatory and/or retaliatory reasons. Since Delgadillo has presented no evidence establishing a failure to provide back-up cover, this Court finds that, even viewing the record in the light most favorable to him, Delgadillo has failed to establish a prima facie case for the portion of his IIED claim based on the discriminatory and/or retaliatory denial of back-up cover.

This Court therefore FINDS that there are no genuine issues of material fact as to the portions of Delgadillo's IIED claim against Axt based on the alleged denials of back-up cover. This Court CONCLUDES that those portions of Delgadillo's claim fail as a matter of law, and Axt is entitled to summary judgment.

## C.   **Other Allegations**

In addition to the limited evidence regarding Axt's alleged involvement in the denial of back-up cover, Plaintiffs have submitted testimony that Axt, *inter alia*:

-held Dowkin and Delgadillo "to the HPD's policies and practices and procedures to the letter," when he did not do so with other officers; [Pltfs.' Dowkin Depo. at 133, 146, 169; Pltfs.' Delgadillo Depo. at 92-96;]

-gave Dowkin "a less than deserved performance rating" in retaliation for filing discrimination complaints; [Pltfs.' Dowkin Depo. at 295;]

-pressured Delgadillo not to pursue a complaint that Fernandez gave Delgadillo an unjustified poor performance evaluation that Delgadillo believed was racially motivated; [Pltfs.' Delgadillo Depo. at 83-85, 87-91;] and

-threatened Delgadillo with a transfer to a less desirable district because it was easier to reassign Delgadillo than it was to reassign Tanaka and Fernandez [id. at 126-28].

In addition, Plaintiffs argue that Axt failed to discipline subordinates for making racist and sexist comments.  [Axt IIED Opp. at 10.]

This district court has recognized that:

Hawaii's definition of outrageous conduct creates a very high standard of conduct in the employment context.  See Ross v. Stouffer Hotel Co., 76 Hawai`i 454, 879 P.2d 1037, 1048 (Haw. 1994) (granting summary judgment for employer on employee's IIED claim); Ingle v. Liberty House, Inc., Civil No. 94-0787(3), 1995 WL 757746, at *4 (Haw. Cir. Ct. Oct. 12, 1995) (noting, "In Ross, the Hawaii Supreme Court recently has set an extremely high, standard for such a claim in the employment context[.]").  Under Hawai`i law, termination alone is not sufficient to support an IIED claim; rather, what is necessary is a showing of something outrageous about the manner or

> process by which the termination was accomplished.
> As stated in <u>Ingle</u>, "[a]lthough intentional
> infliction claims frequently are asserted in
> connection with employee dismissals, recovery is
> rare.  Imposition of liability on this tort theory
> is likely only in the unusual case when an
> employer deliberately taunts an employee, or when
> an employer handles an employee with outrageous
> insensitivity."  <u>Ingle</u>, 1995 WL 757746, at *4
> (quotation omitted; emphasis added).

<u>Ho-Ching v. City & Cnty. of Honolulu</u>, CV. No. 07-00237 DAE-KSC,

2009 WL 1227871, at *12  (D. Hawai`i Apr. 29, 2009) (alterations

in <u>Ho-Ching</u>) (some citations omitted).  Further, as this Court

has previously noted: "'[M]ere insults, indignities, threats,

annoyances, petty oppressions, or other trivialities' are

insufficient" to support an IIED claim.  [5/1/15 Order at 38

(some citations omitted) (quoting <u>Young</u>, 119 Hawai`i at 425, 198

P.3d at 688).]

Even construing the record in the light most favorable

to Plaintiffs, selective enforcement of HPD rules, policies, and

procedures, unfavorable performance ratings, and allowing racist

and sexist comments, are merely "insults, indignities, threats,

annoyances, petty oppressions, or other trivialities" that do not

rise to the level of outrageous conduct necessary to support an

IIED claim.  <u>See</u> 5/1/15 Order at 38 (some citations omitted)

(citing <u>Shoppe v. Gucci Am., Inc.</u>, 94 Hawai`i 368, 387, 14 P.3d

1049, 1068 (2000) (holding that employer's shouting at and

abusive manner toward employee, including public chastisement

about attire and comportment, were not outrageous as a matter of

23

law)).

Even assuming, *arguendo*, that any type of adverse
employment action - not just termination - may constitute
outrageous conduct "when an employer deliberately taunts an
employee, or when an employer handles an employee with outrageous
insensitivity," there is no evidence indicating that this
occurred in connection with either the allegedly unjustified
performance evaluations, the failure to process Delgadillo's
complaint about the unjustified evaluation that he received from
Fernandez, or the threatened transfers. Further, even viewing
all of the alleged incidents as a whole, they do not constitute
the type of outrageous conduct necessary to support an IIED
claim.

This Court therefore FINDS that there are no genuine
issues of material fact as to the portions of Dowkin and
Delgadillo's IIED claims against Axt based on incidents beyond
the denial of back-up cover. This Court CONCLUDES that those
portions of their claims fail as a matter of law, and Axt is
entitled to summary judgment.

        D.    **Summary**

As to all portions of Dowkin and Delgadillo's IIED
claims against Axt, this Court FINDS that there are no genuine
issues of material fact, and CONCLUDES that Axt is entitled to
judgment as a matter of law. This Court therefore GRANTS the Axt

24

IIED Motion.

## II. Dowkin's Remaining IIED Claim against Tanaka

In light of the foregoing analysis, this Court *sua sponte* reconsiders its ruling in the 5/1/15 Order that there are genuine issues of material fact regarding whether Tanaka failed to provide back-up cover to Dowkin in the April 6, 2008 incident. [5/1/15 Order at 40.] As with Axt, the only evidence in the record regarding Tanaka's alleged involvement in the April 6, 2008 incident is Dowkin's testimony that Tanaka was on duty at the time Dowkin conducted the traffic stop and the patrol officers failed to cover him after he requested it. [Pltfs.' Separate Concise Statement of Facts in Supp. of Pltfs.' Mem. in Opp. to Def. Sergeant Ralstan Tanaka's Motion for Partial Summary Judgment on the Fifth Cause of Action of the Third Amended Complaint (Intentional Infliction of Emotional Distress), filed 2/23/14 (dkt. no. 509), Exh. A (Excerpts of Trans. of 4/4/11 Depo. of Shermon Dowkin) at 254-55.] For the same reasons set forth *supra* Discussion Section I.B.2.a., this Court FINDS that there are no genuine issues of material fact regarding Tanaka's involvement in the April 6, 2008 incident, and CONCLUDES that Tanaka is entitled to judgment as a matter of law as to that portion of Dowkin's IIED claim. This Court GRANTS Tanaka summary judgment as to the portion of Dowkin's IIED claim against him

based on the April 6, 2008 incident.[9]

III. **Tanaka & Kashimoto Punitive Damages Motion**

The Tanaka & Kashimoto Punitive Damages Motion first seeks summary judgment as to Delgadillo's request for punitive damages against Tanaka and as to Bennett Huihui's and Delgadillo's request for punitive damages against Kashimoto because those Plaintiffs have no remaining claims against them. In addition, now that this Court has granted summary judgment in favor of Tanaka as to the only remaining portion of Dowkin's IIED claim against him, Dowkin has no remaining claims against Tanaka.

Under both federal law and Hawai`i law, punitive damages are a remedy, not an independent cause of action. See, e.g., Cortez v. Skol, 776 F.3d 1046, 1050 n.2 (9th Cir. 2015); Ross v. Stouffer Hotel Co. (Hawai`i) Ltd., 76 Hawai`i 454, 466, 879 P.2d 1037, 1049 (1994). Insofar as Dowkin and Delgadillo have no remaining claims against Tanaka, and Delgadillo and Bennett Huihui have no remaining claims against Kashimoto, there is no substantive basis upon which this Court could award punitive damages. This Court therefore GRANTS the Tanaka & Kashimoto Punitive Damages Motion as to: Dowkin's request for punitive damages against Tanaka; Delgadillo's request for

---

[9] This Court emphasizes that this Order has no effect on the other rulings in the 5/1/15 Order, including the denial of Tanaka's motion for summary judgment as to the portion of Bennett Huihui's IIED claim against him based on the Porky's Incident.

punitive damages against Tanaka; and Bennett Huihui's request for punitive damages against Kashimoto.

The Tanaka & Kashimoto Punitive Damages Motion also seeks summary judgment as to the remaining claims against them: Bennett Huihui's IIED claim against Tanaka; and Dowkin's IIED claim against Kashimoto. Under Hawai`i law:

> Punitive damages "are generally defined as those damages assessed in addition to compensatory damages for the purpose of punishing the defendant for **aggravated or outrageous misconduct** and to deter the defendant and others from similar conduct in the future." <u>Masaki v. Gen. Motors Corp.</u>, 71 Haw. 1, 6, 780 P.2d 566, 570 (1989) (citations omitted). In order to recover punitive damages, "[t]he plaintiff must prove by clear and convincing evidence that the defendant has acted wantonly or oppressively or with such malice as implies a spirit of mischief or criminal indifference to civil obligations, or where there has been some **wilful misconduct or that entire want of care which would raise the presumption of a conscious indifference to consequences.**" <u>Id.</u> at 16–17, 780 P.2d at 575 (citation omitted).

<u>Ass'n of Apartment Owners of Newtown Meadows v. Venture 15, Inc.</u>, 115 Hawai`i 232, 297, 167 P.3d 225, 290 (2007) (alteration in <u>Newtown Meadows</u>) (emphases added).

Some of the elements that would support an award of punitive damages, such as outrageous misconduct and willfulness or entire want of care, overlap with the elements required to establish an IIED claim. <u>See</u> 5/1/15 Order at 36 (describing the elements of an IIED claim). Insofar as this Court has found that there are genuine issues of material fact as to Bennett Huihui's

IIED claim against Tanaka and Dowkin's IIED claim against Kashimoto, see id. at 39, 44, this Court FINDS that there are genuine issues of material fact as to Bennett Huihui's request for punitive damages against Tanaka and Dowkin's request for punitive damages against Kashimoto. Tanaka and Kashimoto are therefore not entitled to summary judgment as to those requests.

The Tanaka & Kashimoto Punitive Damages Motion is DENIED as to Bennett Huihui's request for punitive damages against Tanaka and Dowkin's request for punitive damages against Kashimoto.

## III. **Kwon & Fernandez § 378-2(3) Motion**

### A. **Exhaustion**

This Court has previously described the standards applicable to the issue of whether Plaintiffs exhausted their administrative remedies as to their § 378-2(3) claims in Count V. See 5/1/15 Order at pages 27-36 (granting Tanaka and Kashimoto's motion for summary judgment as to Count III).

As this Court noted in the 5/1/15 Order, there is no Haw. Rev. Stat. § 378-2(1) or (2) claim against the City, nor is there a § 378-2(3) claim against Kwon and/or Fernandez in any of Plaintiffs' charges of discrimination. See Kwon & Fernandez's Concise Statement of Facts in Supp. of Kwon & Fernandez § 378-2(3) Motion ("Kwon & Fernandez's § 378-2(3) CSOF"), filed 4/15/15 (dkt. no. 592), Aff. of Cary T. Tanaka ("C. Tanaka § 378-2(3)

28

Aff."), Exhs. A, B, B1, D, E, E1, G (Hawai`i Civil Rights
Commission Charges of Discrimination (collectively, "Plaintiffs'
Charges"))).  Thus, the issue currently before this Court is
whether Plaintiffs exhausted their § 378-2(3) claims against Kwon
and Fernandez, where none of them asserted those claims in his or
her respective charges.

As it did in the 5/1/15 Order, this Court must consider
the exceptions described in Sosa v. Hiraoka, 920 F.2d 1451, 1458-
60 (9th Cir. 1990), to determine whether Kwon and Fernandez can
be sued under § 378-2(3), where they were not named in
Plaintiffs' Charges.  See 5/1/15 Order at 29 (quoting the Hawai`i
Intermediate Court of Appeals' ("ICA") articulation of the Sosa
exceptions in Simmons v. Aqua Hotels & Resorts, Inc., 130 Hawai`i
325, 329, 310 P.3d 1026, 1030 (Ct. App. 2013)).[10]  There is no

_____

[10] In Simmons, the ICA noted that:

> The Ninth Circuit has identified several
> exceptions to the general rule that a party not
> named in an EEOC charge cannot be sued under
> Title VII.  Suit is permitted against the unnamed
> party when: (1) the unnamed party was involved in
> the acts giving rise to the EEOC charge; (2) the
> EEOC or the unnamed party should have anticipated
> a Title VII suit against the unnamed party;
> (3) the named party is a principal or agent of a
> unnamed party or if they are substantially
> identical; (4) the EEOC could have inferred that
> the unnamed party violated Title VII; or (5) the
> unnamed party had notice of the EEOC conciliation
> efforts and participated in the EEOC proceedings.
> Sosa v. Hiraoka, 920 F.2d 1451, 1458-60 (9th Cir.
> 1990).

(continued...)

29

evidence in the record that Kwon and Fernandez: received Plaintiffs' Charges; participated in the agency proceedings regarding the charges; or received the right-to-sue letters issued to Plaintiffs regarding the charges. This Court therefore finds that the fifth <u>Sosa</u> exception does not apply to Kwon and Fernandez. Further, as in the 5/1/15 Order, this Court finds that, even construing the record in the light most favorable to Plaintiffs, there is no evidence that the City is a principal or agent of Kwon or Fernandez or that they are substantially identical. [5/1/15 Order at 31-32 (citing <u>Kosegarten v. Dep't of the Prosecuting Attorney</u>, 907 F. Supp. 2d 1143, 1161 (D. Hawai`i 2012)).] This Court therefore finds that the third <u>Sosa</u> exception does not apply to Kwon and Fernandez.

As to the first, second, and fourth exceptions, this Court has ruled that the fact that Plaintiffs' Charges were not directed to an individual Defendant is not "dispositive because the form does not direct the charging party to identify **employees** who allegedly participated in the discrimination." [<u>Id.</u> at 32 (emphasis in original).]

However, this Court's analysis of Plaintiffs' § 378-2(3) claims against Tanaka and Kashimoto differs because Plaintiffs' Charges expressly identify Kwon and Fernandez as

---

[10](...continued)
130 Hawai`i at 329, 310 P.3d at 1030.

perpetrators of the alleged discrimination and retaliation.

-Dowkin's November 10, 2008 Charge, which alleges race
  discrimination and retaliation, states that Kwon "made a
  racial comment about" him.  [C. Tanaka § 378-2(3) Aff., Exh.
  A at 1.]

-Dowkin's December 2, 2008 Charge, which alleges retaliation,
  states that, since filing the November 10, 2008 Charge, he
  was subjected to retaliation, including an incident on
  November 13, 2008 when Kwon "appeared 'accusatory' and
  'angry'" at Dowkin for arriving to work late, even though
  Dowkin "previously inform[ed] dispatch that [he] had to stop
  and assist a motorist on [his] way to work."  [Id., Exh. B
  at 1.]  The charge also states that, on November 21, 2008,
  Kwon informed Dowkin that Dowkin was being investigated for
  turning his time cards in late during the month of October.
  Dowkin told Kwon that others had done the same thing without
  being subjected to an investigation.  [Id. at 2.]  Dowkin's
  Amended Charge dated May 5, 2009 contains the same
  allegations.  [C. Tanaka § 378-2(3) Aff., Exh. B1.]

-Delgadillo's November 10, 2008 Charge, which alleges race
  discrimination and retaliation, states his "supervisors and
  fellow officers routinely make derogatory racist and ethnic
  comments to" him, and his "fellow officers refused to cover
  [him] on dangerous traffic stops which involve arrests."
  [Id., Exh. D at 1.]  This charge does not identify specific
  persons who were involved in those incidents.

-Delgadillo's May 14, 2009 Amended Charge, which alleges
  retaliation, identifies Fernandez as "one of the alleged
  harassers in the racial discrimination case."  [Id., Exh. E1
  at 1.]

-Bennett Huihui's April 28, 2009 Charge, which alleges gender
  discrimination and retaliation, states that, on February 20,
  2009, she filed a complaint against Fernandez, and others,
  stating that she was being retaliated against for giving
  testimony regarding Dowkin's race discrimination complaint.
  The alleged retaliation included being removed from the list
  of attendees for a recertification class after Fernandez saw
  her speaking to Dowkin on February 10, 2009.  [Id., Exh. G
  at 1.]  The charge also alleges that Fernandez gave her
  unjustified low scores on her performance evaluation on
  April 20, 2009.  [Id. at 2.]

This Court therefore finds that the first <u>Sosa</u> exception applies to Kwon and Fernandez. Even though some of the factual allegations against Kwon and Fernandez in the Third Amended Complaint are not included in Plaintiffs' Charges, this Court finds that the additional allegations are reasonably related to the allegations in the charges because the additional allegations "are consistent with [Plaintiffs'] original theor[ies] of the case." <u>See</u> <u>French v. Haw. Pizza Hut, Inc.</u>, 105 Hawai`i 462, 476, 99 P.3d 1046, 1066 (2004) (quoting <u>B.K.B. v. Maui Police Dep't</u>, 276 F.3d 1091, 1100 (9th Cir. 2002)).

In addition, this Court has found that: "To the extent that Plaintiffs' Charges clearly alleged that specific individuals were involved in the discrimination and retaliation alleged in Plaintiffs' Charges, the [Hawai`i Civil Rights Commission ("HCRC")] anticipated and/or inferred that Plaintiffs were bringing state law claims against those individuals pursuant to § 378-2(3)." [5/1/15 Order at 34-35.] Thus, this Court finds that the HCRC anticipated and/or inferred that Plaintiffs were bringing § 378-2(3) claims against Kwon and Fernandez, and therefore the second and fourth <u>Sosa</u> exceptions apply to Kwon and Fernandez. This Court CONCLUDES that Plaintiffs' Charges exhausted Plaintiffs' administrative remedies as to their § 378-2(3) claims against Kwon and Fernandez.

**B.** **Evidence of Aiding, Abetting, Inciting,
Compelling, or Coercing Discrimination**

Kwon and Fernandez also argue that they are entitled to
summary judgment as to Plaintiffs' § 378-2(3) claims because
Plaintiffs have not presented any admissible evidence that Kwon
and Fernandez "aided, abetted, incited, compelled, or coerced the
doing of any alleged discriminatory practice of the City."  [Mem.
in Supp. of Kwon & Fernandez § 378-2(3) Motion at 14.]

Kwon and Fernandez emphasize that all of the counts in
the Third Amended Complaint alleging that they "conspired or
acted in concert with each other to discriminate or retaliate
against Plaintiffs" have been dismissed.[11]  [Id.]  Kwon and
Fernandez cite no authority, nor is this Court aware of any
authority, supporting their position that, if a plaintiff's
conspiracy claims fail, any § 378-2(3) claim must also fail.

Kwon and Fernandez are correct that a § 378-2(3) claim
requires that there "be at least two persons (someone who
incites, compels, or coerces, and some other person who is
incited, compelled, or coerced)."  See Maizner v. Haw., Dep't of
Educ., 405 F. Supp. 2d 1225, 1239 (D. Hawai`i 2005).  Plaintiffs

_____

[11] Chief United States District Judge Susan Oki Mollway, who
previously presided over this case, dismissed Count VII,
conspiracy to interfere with civil rights, in violation of 42
U.S.C. § 1985, and Count VIII, civil conspiracy.  See Order
Granting Defendants' Motion for Partial Dismissal of Third
Amended Complaint, filed 7/23/12 (dkt. no. 382), at 12-21,
*available at* 2012 WL 3012643.

have presented sufficient evidence that Kwon and Fernandez each acted with at least one other person to commit acts of discrimination and/or retaliation.

As noted previously, Plaintiffs have presented testimony that Fernandez ordered officers not to help the DUI team, [Pltfs.' Dowkin Depo. at 63-64,] and Kashimoto ensured that the order was carried out [Dowkin Aff. at ¶ 33]. Bennett Huihui has stated that "[l]ate in 2008, when Sergeant Fernandez and Officer Kashimoto gave their 'no cover' order," she "was left alone with felony suspects or traffic stops, in the dark, on the most uninhabited beat in the district." [Pltfs.' Separate Concise Statement of Facts in Supp. of Pltfs.' Mem. in Opp. to Sergeant Wayne Fernandez's Motion for Partial Summary Judgment Against Cassandra Bennett Huihui on the Fifth Cause of Action in the Third Amended Complaint (Intentional Infliction of Emotional Distress), filed 5/4/15 (dkt. no. 618), Aff. of Cassandra Bennett Huihui at ¶ 4.h.] Plaintiffs have also presented testimony that Delgadillo believed that Fernandez's poor evaluation of Delgadillo's performance at the end of 2007 was racially motivated, and he brought that concern to Kwon and Axt. [Pltfs.' Delgadillo Depo. at 83-85, 88-91.] Delgadillo testified that they pressured him not to pursue the complaint and told him: "Don't start a war with Fernandez, just let it go." [Id. at 90.] This Court FINDS that this evidence, and other similar evidence

in the current record, are sufficient to raise a genuine issue of material fact as to Plaintiffs' § 378-2(3) claims against Kwon and Fernandez. This Court therefore CONCLUDES that Kwon and Fernandez are not entitled to summary judgment as to Plaintiffs' § 378-2(3) claims against them, and DENIES the Kwon & Fernandez § 378-2(3) Motion        .

## V.    Kwon & Fernandez Punitive Damages Motion

Based on this Court's prior orders and its ruling on the Kwon & Fernandez § 378-2(3) Motion, Count III is the only remaining claim against Kwon and Fernandez. This Court finds that there are genuine issues of material fact as to whether Kwon and Fernandez were involved the alleged practice of denying back-up cover to Plaintiffs for discriminatory and/or retaliatory reasons. This Court also finds that, if Plaintiffs prove these allegations, a reasonable jury could find that the evidence also supports an award of punitive damages.

This Court therefore FINDS that there are genuine issues of material fact which preclude summary judgment as to Plaintiffs' request for punitive damages against Kwon and Fernandez, and this Court DENIES the Kwon & Fernandez Punitive Damages Motion.

<u>**CONCLUSION**</u>

On the basis of the foregoing, this Court rules as follows:

-Axt's Motion for Partial Summary Judgment Against Plaintiff
Sergeant Shermon Dean Dowkin on the Fifth Cause of Action of
the Third Amended Complaint (Intentional Infliction of
Emotional Distress), filed April 15, 2015, and the City's
joinder thereto, filed April 21, 2015, are HEREBY GRANTED;

-Tanaka and Kashimoto's Motion for Summary Judgment Regarding
Punitive Damages and Any Other Outstanding Claims, filed
April 15, 2015, and the City's joinder thereto, filed
April 21, 2015, are HEREBY GRANTED IN PART AND DENIED IN
PART;

-Kwon and Fernandez's Motion for Partial Summary Judgment Against
All Plaintiffs on the Third Cause of Action in the Third
Amended Complaint (Violations of the Hawaii Civil Rights Law
- HRS Section 378-2(3)), filed April 15, 2015, and the
City's joinder thereto, filed April 21, 2015, are HEREBY
DENIED; and

-Kwon and Fernandez's Motion for Summary Judgment as to Punitive
Damages, filed April 15, 2015, and the City's joinder
thereto, filed April 21, 2015, are HEREBY DENIED.

In particular, the Tanaka & Kashimoto Punitive Damages Motion is
GRANTED as to: Dowkin's request for punitive damages against
Tanaka; Delgadillo's request for punitive damages against Tanaka
and Kashimoto; and Bennett Huihui's request for punitive damages
against Kashimoto. The motion is DENIED as to: Bennett Huihui's
request for punitive damages against Tanaka; and Dowkin's request
for punitive damages against Kashimoto.

In addition, this Court *sua sponte* reconsiders the
portion of its May 1, 2015 order addressing four previous defense
motions for summary judgment, [dkt. no. 615,] that denied

36

Tanaka's motion for summary judgment as to the portion of Count V alleging an intentional infliction of emotional distress claim by Dowkin against Tanaka based on the alleged denial of back-up cover on April 6, 2008. This Court HEREBY GRANTS summary judgment in favor of Tanaka as to that portion of Count V.

Lastly, the Court summarizes the remaining claims in this matter:

-Count I, race and gender discrimination, in violation of Title VII of the Civil Rights Act of 1964, as amended by the Civil Rights Act of 1991, 42 U.S.C. § 2000e-2, *et seq.*, by all Plaintiffs against the City;

-Count II, race discrimination, in violation of Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d, *et seq.*, by Dowkin and Delgadillo against the City;

-Count III, violations of Haw. Rev. Stat. § 378-2(1) and (2) by all Plaintiffs against the City, and violations of § 378-2(3) by all Plaintiffs against Fernandez and Kwon; and

-Count V, intentional infliction of emotional distress by Dowkin against Kashimoto as to the October 11, 2010 incident, and by Bennett Huihui against Tanaka as to the October 18, 2010 Porky's Incident.

IT IS SO ORDERED.

DATED AT HONOLULU, HAWAII, July 24, 2015.



/s/ Leslie E. Kobayashi
Leslie E. Kobayashi
United States District Judge

SERGEANT SHERMON DEAN DOWKIN, ET AL. VS. THE CITY AND COUNTY OF HONOLULU, ET AL; CIVIL 10-00087 LEK-RLP; ORDER REGARDING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT AND JOINDERS THERETO

37